Otis BOWEN, M.D., Governor of the State of Indiana; William E. Murray, M.D., Mental Health Commissioner; Patient Remuneration Board, State of Indiana, Defendants–Appellants,

v.

Leo J. SONNENBURG, a/k/a Leo J. Sonburg, by his sister and Legal Guardian, Marie Maupin; Gerald Hartnett; on behalf of themselves and all Similarly Situated Plaintiffs, Plaintiffs–Appellees.

No. 3–1078A267.

Court of Appeals of Indiana,
Third District.

Oct. 9, 1980.

---

392

Theodore L. Sendak, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., for defendants–appellants.

Terrance L. Smith, Anthony DeBonis, Jr., Murphy, McAtee, Murphy & Costanza, East Chicago, J. Patrick Smith, Smith & Smith, LaPorte, for plaintiffs–appellees.

GARRARD, Presiding Judge.

This action was brought by Leo J. Sonnenburg and Gerald Hartnett to secure compensation for services performed while they were patients in institutions for the mentally handicapped and mentally retarded in the State of Indiana. In addition to individual claims they sought to conduct a class action for the benefit of all other persons similarly situated.

### I.  History of the Case

A simplified account of the progress of the suit is as follows. The original complaint was filed May 23, 1974. It contended that the plaintiffs were entitled to be paid for all services performed in accord with the minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219.[1]

In March 1976, the complaint was amended to refer to the Indiana Patient Remuneration Act, IC 16–13–12.8–1 with the contention that the act was unconstitutional as a violation of the supremacy clause.

The complaint was again amended, apparently in August 1977 (although the file stamped copy contained in the transcript bears the date September 22, 1978). This complaint asserted that patient–employees were entitled to compensation under the Indiana act after January 21, 1972; that the Fifty Thousand Dollar ($50,000) appropriation contained in the act denied them equal protection of the laws and imposed upon them involuntary servitude in violation of the federal constitution; and that "[t]he named class of plaintiffs is incapable, by reason of mental handicaps and because they are, while mental patients in the physical custody of the defendants, unable to bring administrative action before the Patient Remuneration Board as established by the statute to recover claims for wages past due." It is unclear whether plaintiffs were attempting to state a claim for the period prior to January 21, 1972.

---

1. *See Souder v. Brennan* (D.C.D.C.1973), 367 F.Supp. 808. Subsequently, the provisions of that act making it applicable to employees of a state were declared an unconstitutional infringement upon the powers reserved to the states. *National League of Cities v. Usery* (1976), 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245.

The defendants answered in denial and raised as affirmative defenses failure to state a claim, lack of jurisdiction of the subject matter, lack of standing of plaintiffs, statute of limitations and the failure of plaintiffs to exhaust their administrative remedies.

In November the plaintiffs filed a motion for partial summary judgment in which they sought judgment that this was a proper class action; that the defendants were obligated to pay the minimum wage under the Fair Labor Standards Act to mentally ill or retarded employees in hospitals, institutions and schools operated by the Department of Mental Health and had failed to do so; and a declaratory judgment that the plaintiffs had performed valuable services for the defendants.

The defendants' response, among other things, questioned the propriety of a class action. In addition they moved for a partial summary judgment to the effect that the Patient's Remuneration Act provided an administrative remedy that must be utilized before a civil action could be maintained.

On January 11, 1978 Alban L. Smith petitioned to intervene asserting that he was "the duly appointed guardian ad litem of all the patient workers who are confined to the Beatty Memorial Hospital, Westville, Indiana, and has been such guardian ad litem since the 23rd day of June, 1976," and as such was interested in the litigation.

Upon this state of the record, and considering the affidavits on file as well as the defendants' responses to discovery, on February 16, 1978 the court entered two orders. First, it found that Alban L. Smith was guardian ad litem for all patient–workers at Beatty Memorial Hospital and as such should be allowed to intervene as a plaintiff. Secondly, it considered the motions for partial summary judgment, and determined that the plaintiffs' motion should be granted and the defendants' denied. It then entered an order specifying that:

    (a) the action was properly maintainable as a class action;

    (b) a proper class consisted of "all patient workers who have labored in the State of Indiana institutions for the mentally handicapped or mentally retarded since the enactment of the Patient Remuneration Law (L.C. [sic] 16-13-12.8-1, et seq.); "

    (c) the plaintiffs establish guardians ad litem in each of the counties where the ten state institutions enumerated by the court exist and such guardians be given the appropriate class action notice;

    (d) the defendants notify by first class mail each member of the class not (no longer) confined in one of the institutions; and

    (e) "the members of the class are entitled to be paid for all their labor performed for the defendants, at least to the gross amounts specified in the Patient Remuneration Law, after April 1, 1972; "

From these orders an interlocutory appeal was perfected by the defendants. However, before addressing the issues raised, it is necessary that we depart briefly to consider the statute in question since its scheme and applicability bear directly upon the matters in issue.

## II. Patient Remuneration Act

Because of amendments to the Indiana Patient Remuneration Act, IC 16–13–12.8–1 et seq. during the period contemplated in the lawsuit, we consider the act as it evolved.

The bill was originally enacted by the 1969 legislature, vetoed and enacted over the veto on January 22, 1971. Acts 1969, Ch. 487. This act established a seven member patient remuneration board and concerned patients in any mental institution or institution for the mentally retarded operated by the State Department of Mental Health. Essentially it required the board to establish a schedule of occupational classifications and a remuneration schedule for them within six months after the effective date of the act. It provided the schedule should become effective "subject to the availability of funds" within seven months

after the effective date and would provide remuneration for patients performing "work activity" as defined in the act. Section 9 provided a right of administrative review through the patient remuneration board and subsequent appeal to the courts for any patient who believed he had not been properly remunerated. No effective date was specified in the act, nor was a specific appropriation made.

The 1971 legislature also amended the act. Acts 1971, P.L. 474. These amendments restructured the board and increased its size to nine members; redefined "work activity" for which compensation was contemplated; and provided that the patient remuneration schedule should be completed within six months after the effective date of the act and would take effect "within thirty (30) days after having been reviewed and approved by the State Budget Agency" as to the availability of funds to implement its provisions. Again no effective date was specified, but an appropriation of fifty thousand dollars annually was made with the expression that "[t]he maximum annual expenditure may not exceed this specific appropriation." Acts 1971, P.L. 474, § 9. Additionally this version provided patients would be entitled to remuneration "if funds are available at the rate set forth in the remuneration schedule" for work activity "on and after the date the Department of Mental Health patient remuneration schedule shall first become effective." [2] The right of administrative review by the board was retained but reference to civil actions was deleted.

Acts of 1972, P.L. 3, approved January 21, 1972 and containing an emergency clause repealed Chapter 487 of the Acts of 1969, as amended, and re-enacted the 1971 act as Ch. 12.8 of IC 1971, 16–13, retaining its effective dates.

Amendment again occurred in 1975. Acts 1975, P.L. 151. The legislature then redefined the significant service in terms of "employment relationship" rather than "work activity." This version required the board to prepare a pay plan for patient remuneration but deleted reference to its completion date and to review and approval by the State Budget Agency. It provided the remuneration schedule should be the federal minimum wage, except that the board could "grant higher or lower wages in accordance with the skills of the patient." Also deleted was the proviso "if funds are available" concerning when the schedule was to become effective. These amendments became effective upon promulgation on July 29, 1975.

Finally, Acts of 1978, P.L. 21 abolished the Patient Remuneration Board and its functions effective December 31, 1978. Also repealed were the provisions for administrative review and the appropriation of fifty thousand dollars per year.

These institutions referred to were found by the trial court to include the following: Central State Hospital, Indianapolis; Evansville State Hospital, Evansville; Madison State Hospital, Madison; Logansport State Hospital, Logansport; Richmond State Hospital, Richmond; Muscatatuck State Hospital, Butlerville; Norman Beatty Memorial Hospital, Westville; Larue Carter Memorial Hospital, Indianapolis; New Castle State Hospital, New Castle; and Fort Wayne State Hospital and Training Center, Fort Wayne.

From the foregoing it is readily apparent that the action before us involves substantive issues of great weight concerning the rights of mentally handicapped persons in state institutions and the public treasury. Those issues are complicated by a difficult statutory history, imprecision in the nature of the claims advanced,[3] and the complexity of class action.

We find the court erred both in its handling of the class action determination and the substantive issues decided on summary

---

2. These statutes became effective on promulgation September 2, 1971. The schedules should therefore have been prepared by March 2, 1972.

3. · While plaintiffs' second amended complaint voices a claim under the statute, it arguably encompasses claims under both the state and federal constitution as well.

judgment. Since we find it necessary to reverse and remand, we also discuss those class action matters likely to arise again regardless of whether they were properly put in issue in this appeal in an effort to expedite the course of this litigation. For the sake of clarity we will treat them in the context in which they occur.

### III. Guardian ad litem

In its first order of February 16 the court found that Alban L. Smith was the duly appointed guardian ad litem of all patient workers at Norman Beatty Memorial Hospital and *as such* should be permitted to intervene as a party plaintiff in the action.

■ A guardian ad litem is someone appointed by the court in which a particular litigation is pending to represent a ward or an unborn person *in that particular litigation.* IC 29-1-18-1; *State ex rel. Keating v. Bingham* (1954), 233 Ind. 504, 121 N.E.2d 727. Such appointments are authorized by IC 34-2-3-1 for protecting the interests of a minor and are explicitly recognized by IC 29-1-18-1 for the protection of one who is incapable by reason of insanity, mental illness or mental retardation of either managing his property, caring for himself, or both.

■■ By its very definition, and in contrast to the statutes dealing with general guardianships of the person and estate, IC 29-1-18-1 et seq., the only status of a guardian ad litem exists in the particular litigation in which the appointment occurs. It therefore clearly follows that whether Alban L. Smith had, on one occasion or many, served capably as guardian ad litem for one or more patients at Norman Beatty Memorial Hospital, created in him no status or standing to intervene in this litigation. Thus, the court committed error when it permitted his intervention on those grounds. Moreover, since the rules require that for a class action only "one or more members of a class" may sue or be sued as representative parties; and since Mr. Smith is clearly not a member of the proposed class of patient workers, he was otherwise ineligible to participate as a party plaintiff in the cause. TR. 23(A).

### IV. Class Actions

Indiana Rules of Procedure, Trial Rule 23[4] is the general rule[5] governing class

---

4. "(A) Prerequisites to a class action. One or more members of a class may sue or be sued as representative parties on behalf of all only if
(1) the class is so numerous that joinder of all members is impracticable
(2) there are questions of law or fact common to the class
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
(4) the representative parties will fairly and adequately protect the interests of the class.
(B) Class actions maintainable. An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
(b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
(d) the difficulties likely to be encountered in the management of a class action.
(C) Determination by order whether class action to be maintained–Notice–Judgment–Actions conducted partially as class actions.

actions. With two exceptions [6] it follows the federal rule, F.R.C.P. 23, verbatim. In addition, our civil code study commission comments direct the bar, with approval, to the note of the Advisory Committee to the federal rule. *See* 2 W. Harvey, Indiana Practice, Rules of Procedure Annotated 329.

■ For these reasons, and because this is an area of complex litigation where the bench and bar are greatly benefited by a broad body of interpretative law, we will, as far as possible, adopt the federal interpretation of the language of the rule.[7] *See Gumz v. Starke Co. Farm Bur. Co-op Ass'n.* (1979), Ind., 395 N.E.2d 257; *Rembold Motors, Inc. v. Bonfield* (1973), 155 Ind.App. 422, 293 N.E.2d 210.

Subsection (A) of the rule restricts the bringing or defending of an action as a class to one or more members of the class. *Bailey v. Patterson* (1962), 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512. It then enumerates four essentials to *all* class actions:

(1) As soon as practicable after the commencement of an action brought as a class action, the court, upon hearing or waiver of hearing, shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

(2) In any class action maintained under subdivision (B)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that

  (a) the court will exclude him from the class if he so requests by a specified date;

  (b) the judgment, whether favorable or not, will include all members who do not request exclusion; and

  (c) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

(3) The judgment in an action maintained as a class action under subdivision (B)(1) or (B)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (B)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (C)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

(4) When appropriate

  (a) an action may be brought or maintained as a class action with respect to particular issues, or

  (b) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

(D) Orders in conduct of actions. In the conduct of actions to which this rule applies, the court may make appropriate orders

  (1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument;

  (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action;

  (3) imposing conditions on the representative parties or on intervenors;

  (4) requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly;

  (5) dealing with similar procedural matters.

The orders may be combined with an order under Rule 16, and may be altered or amended as may be desirable from time to time. The court shall allow reasonable attorney's fees and reasonable expenses incurred from a fund recovered for the benefit of a class under this section and the court may apportion such recovery among different attorneys.

(E) Dismissal or compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

5. TR 23.1 and 23.2 concern, respectively, derivative actions by shareholders and actions relating to unincorporated associations.

6. The first, discussed *infra*, is the hearing requirement specified in TR 23(C)(1). The other is the express provision concerning the allowance of attorney's fees which appears in TR 23(D).

7. We are, of course, aware of differing interpretations arising among the federal districts. Their very differences are often instructive and provide a cogent basis upon which our court and the Indiana Supreme Court may act in determining the proper construction of the Indiana rule.

(1) The class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Subsection (B) then identifies three separate (although not mutually exclusive) types of class action. Under this section a class action is appropriate if, but only if, in addition to all the requirements of subsection (A) one (or more) of three additional conditions are found to exist. Because the plain language of the rule, TR 23(C)(2) and (3), discussed *infra*, creates substantial distinctions as to notice requirements and opting–out rights concerning other members of the class depending upon whether the class exists under (B)(1), (B)(2), or (B)(3) it is of great importance to the proper maintenance of the action and the validity of its final result that the subsection under which the class exists is properly identified.

A TR 23(B)(1) action is proper where the requirements of TR 23(A) are met and the prosecution of separate actions by or against individual members of the class would create a risk of either

(a) inconsistent or varying adjudications with respect to individual members of the class which would *establish incompatible standards of conduct* for the party opposing the class, or

(b) adjudications with respect to individual members of the class would as a *practical matter be dispositive* of the interest of the other members not parties to the adjudication or *substantially impair or impede* their ability to protect their interests.

Thus, the two alternatives of a (B)(1) type action are defined in terms of the potential effect of the action on either the party, or parties, opposing the class, or the absent members of the class.

■ With respect to an action under TR 23(B)(1)(a) there must be an actual risk that separate actions will be brought or the action fails to actually "create a risk" of establishing incompatible standards of conduct for the party opposing the class. *Berlin Democratic Club v. Rumsfeld* (D.C.D.C. 1976), 410 F.Supp. 144, 163; 7A C. Wright and A. Miller, Federal Practice and Procedure § 1773, p. 8.

■ In addition, the action must pose for the party opposing the class the serious risk of a "conflicted position." [8] As Wright and Miller suggest in the section of their treatise referred to above, this implies more than a risk that in separate actions the opposing party would be obliged to pay damages to some class members but not to others. While such results might indeed be inconsistent, they would not necessarily establish "incompatible standards of conduct" for the opposing party. *See Walker v. City of Houston* (D.C.Tex. 1971), 341 F.Supp. 1124. On the other hand, where recovery is to be had from a fund, then the requirements of TR 23(B)(1)(a) might well be met because the difference in results in separate actions could require the opposing party to apply inconsistent distribution plans to the fund, thereby placing him in the exact position the section of the rule was designed to avoid.[9] *Berman v. Narragansett Racing Ass'n., Inc.* (D.C.R.I. 1969), 48 F.R.D. 333.

■ Concerning the application of TR 23(B)(1)(b), it should be noted that it differs from TR 23(B)(1)(a) in that under this provision it is not necessary to demonstrate the likelihood of separate actions being brought. Moreover, the language of the rule simply necessitates that "as a practical

**8.** Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure* (1967), 81 Harv.L.Rev. 356.

**9.** While we do not reach the question or express opinion thereon, we note the possibility that the maximum appropriation language in the Patient Remuneration Act might, through its limitations, in effect create a fund from which those patient–workers otherwise qualified would be required to recover.

matter" an adjudication concerning those present would be dispositive or impair or impede absent members' ability to protect their interests.

Yet if the only practical effect the action would have on the interests of other members of the class is the stare decisis effect on actions filed in the same jurisdiction. *Larionoff v. U.S.* (D.C.Cir. 1976), 533 F.2d 1167, *aff'd on the merits* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48, or the complexity and expense existing if no prior action had been brought, *McDonnell Douglas Corp. v. U.S. Dist. Ct.* (9th Cir. 1975), 523 F.2d 1083, *cert. den.* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761, the requirements to maintain the action under TR 23(B)(1)(b) have not been met. *See generally* 7A C. Wright and A. Miller, Federal Practice and Procedure § 1774.

The second type of class action, permitted by TR 23(B)(2), exists where the party opposing the class has acted or refused to act on grounds generally applicable to the class, *thereby making appropriate final injunctive relief or corresponding declaratory relief* with respect to the class as a whole.

Thus, the first two types of action are based upon the type or effect of the relief being sought. This is not the case with the third type. Under TR 23(B)(3) where the requirements of TR 23(A) are met, the court may permit a class action if it finds,

"... that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, *and* that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The rule then specifies four (4) matters pertinent to the propriety of maintaining this type of class action which the court should consider in making its findings: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions· (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action.

The significance of carefully differentiating among the three types of class action becomes apparent when one contemplates the next section of the rule.

TR 23(C)(2) provides that in any class action maintained *under subdivision (B)(3)* the court shall direct to the members of the class "the best notice practicable under the circumstances, *including individual notice to all members who can be identified through reasonable effort.* This subsection proceeds to give all such members of the potential class the right to opt out of the litigation if they so request within a time fixed by the court.

■ Two additional important consequences attend this provision of the rule. In *Eisen IV, Eisen v. Carlisle & Jacquelin* (1974), 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732, the Supreme Court determined that the plain language of the rule, the Advisory Committee's Note to Rule 23 (which our study commission commended), and the due process principles of *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 require that individual notice must be provided to all members of the class who are identifiable through reasonable effort. 417 U.S. 176, 94 S.Ct. 2151. In addition, since the class status is presumptively for the benefit of those seeking to maintain the class, the cost of providing such notice must initially be borne by those asserting class status. 417 U.S. 178, 179, 94 S.Ct. 2152, 2153, 40 L.Ed.2d 732. This interpretation imposing upon the party or parties seeking to establish class status the initial cost of providing the necessary notice has subsequently been clarified by the Court to include the costs of identifying the members of the class, at least where the expense is substantial, and this is true even though the court in the proper exercise of its discretion may determine that the physical activity involved in identifying the members should

under the circumstances be performed by the class opponent. *Oppenheimer Fund, Inc. v. Sanders* (1978), 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253. We adopt the Supreme Court's analysis and interpretation as properly applicable to the Indiana rule.

Although there are some federal decisions to the contrary,[10] the general view is that these notice requirements and opting-out rights afforded by TR 23(C)(2) do *not* apply to actions maintained under TR 23(B)(1) or (2). *Jones v. Diamond* (5th Cir. 1979), 594 F.2d 997, 1022; *Society for Individual Rights, Inc. v. Hampton* (9th Cir. 1975), 528 F.2d 905, 906; *Ryan v. Shea* (10th Cir. 1975), 525 F.2d 268; *Ives v. W. T. Grant Co.* (2nd Cir. 1975), 522 F.2d 749; *Hammond v. Powell* (4th Cir. 1972), 462 F.2d 1053, 1055; 7A Wright and Miller, *supra* § 1786, p. 143. The plain language of TR 23(C)(2) makes the mandatory notice provision and opting-out rights applicable only to class actions maintained under TR 23(B)(3).[11] The next subsection, TR 23(C)(3), reinforces this interpretation by again distinguishing between actions brought under (B)(1) and (2) and those brought under (B)(3). This section simply provides that in (B)(1) and (2) actions the judgment "whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class." No more is necessary, although concerning (B)(3) actions the court is additionally required to specify or describe those who the court finds included within the class judgment in compliance with the notice and opting-out rights effected. The obvious implication of this distinction is that the class members in a (B)(1) or (2) action are to be bound without further definition or exclusion.

The section thus provides the court with a valuable touchstone in the often difficult determination of whether a class action is properly maintainable under (B)(1) or (2), especially (B)(1): Are the consequences of maintaining the class action such that the absent members of the class should properly be bound regardless of notice and without option to exclude themselves?

The answer, assuming the other requisites to establishing a class may be found to exist, focuses upon the prerequisite of TR 23(A)(4) that "the representative parties will fairly and adequately protect the interests of the class."[12] It is a question of fact. *Susman v. Lincoln American Corp.* (7th Cir. 1977), 561 F.2d 86, 90. As the Supreme Court stated in *Hansberry v. Lee* (1940), 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22,

"It is one thing to say that some members of a class may represent other members in a litigation where the sole and common interest of the class in the litigation, is either to assert a common right or to challenge an asserted obligation. It is quite another to hold that all those who are free alternatively either to assert rights or to challenge them are of a single class, so that any group merely because it is of the class so constituted, may be deemed adequately to represent any others of the class in litigating their interests in either alternative. Such a selection of representatives for purposes of litigation, whose substantial interests are not necessarily or even probably the same as those whom they are deemed to represent, does not afford that protection to absent parties which due process requires." (citations omitted)

311 U.S. 44, 45, 61 S.Ct. 119.

In *Eisen II; Eisen v. Carlisle & Jacquelin* (2nd Cir. 1968), 391 F.2d 555 the

---

10. This view appears to be followed principally by the district courts in New York. *See, e. g., Brandt v. Owens–Illinois, Inc.* (D.C.N.Y. 1973), 62 F.R.D. 160, 171.

11. Of course, in actions brought under TR 23(B)(1) or (2) the court may, and ordinarily should, order notice to the absent members of the class through its power under TR 23(D)(2) so that those members may seek to intervene and participate in the litigation if they desire.

Such notice (TR 23(D)(2)) is not, however subject to the stringent requirements imposed in *Eisen IV*.

12. While this requirement should also be carefully observed in a (B)(3) action, greater latitude does exist because of the requirements of notice and the right of absent members to opt out of the action.

Second Circuit enumerated four considerations for courts in determining whether adequate representation exists for a plaintiff class. They are quoted by Wright and Miller, *supra*, with approval and we deem them applicable.

(1) Is the *attorney* qualified, experienced, and generally able to conduct the proposed litigation?

(2) Can the likelihood be reasonably eliminated that the litigants are involved in a collusive suit or that the appearing plaintiffs have interests antagonistic to those of the remainder of the class?

(3) Is plaintiff's claim really typical of those of the entire class?

(4) The question is not to be determined on a quantitative basis, i. e., that a small number of claimants cannot adequately represent an entire class.

*See also* the extensive discussion of these considerations in 7 Wright and Miller, *supra*, § 1765.

Finally, we must make two observations about the procedure provided by the rule for determining the class issues.

TR 23(C)(1) provides,

"As soon as practicable after the commencement of an action brought as a class action, the court, *upon hearing or waiver of hearing*, shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits." (our emphasis)

■ The companion section of the federal rule is identical except that it omits the emphasized phrase. Thus, the Indiana rule not only plainly expresses a hearing requirement, but being adopted some four years after its federal counterpart, it must be presumed that the framers of our rule intended to change the consequences existing under the otherwise identical federal rule.[13] We conclude that unless waived by the parties, our rule requires the court to conduct a hearing upon whether the action should be permitted as a class action.

■ Moreover, we find this approach is supported by sound reason. What we have said so far points up the substantial questions that exist in determining the various elements necessary to proper maintenance of a class action and the significance of correctly identifying the type of class action involved. We believe that an adequate hearing is a valuable safeguard against permitting some of these critical considerations from being submerged by the overall magnitude of the issues the litigation seeks to reach. However, we reject the state's assertion that it is incumbent upon the potential class plaintiff at this hearing to establish the likelihood that it will ultimately succeed upon the merits. While some of the decisions prior to *Eisen IV* so held, for the purpose of allocating the burdens of giving notice, the Supreme Court in *Eisen IV* resolved the problem by placing the burden upon the party asserting class status and expressly rejecting consideration of the ultimate merits at this stage as inimical to both the purpose of subsection (C)(1) and the substantial rights of the defendant. 417 U.S. at 178, 179, 94 S.Ct. at 2152, 2153.

■ Secondly, and with respect to the language of the rule indicating the hearing and determination should be made "[a]s soon as practicable after the commencement of an action . . . ." we are in accord with Judge [now Mr. Justice] Stevens' comment in his dissent to *Sprogis v. United Air Lines* (7th Cir. 1971) 444 F.2d 1194, 1207, *cert. den.* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543:[14]

"At a minimum, this rule requires the class to be defined before the merits of the case have been decided . . . . A pro-

---

13. Some decisions have held the federal rule does not mandate a hearing. *See, e. g., Gosa v. Securities Inv. Co.* (5th Cir. 1971), 449 F.2d 1330. *But see Herbst v. Able* (D.C.N.Y. 1968), 45 F.R.D. 451.

14. The view was adopted by the district court on remand (D.C.Ill. 1972), 56 F.R.D. 420, and has subsequently been accepted by the Seventh Circuit, *Peritz v. Liberty Loan Corp.* (7th Cir. 1975), 523 F.2d 349.

cedure which permits a claim to be treated as a class action if plaintiff wins, but merely as an individual claim if plaintiff loses, is strikingly unfair."

This, of course, is the resultant effect in TR 23(B)(3) actions where notice and the opportunity to opt out occur after a determination on the merits. There is even a more subtle disadvantage that may affect absent class members. Apparent determinations on the merits may cause them to opt in or out of the litigation and accept or reject the adequacy of existing representation in circumstances where the apparent determination of merits is erroneous or defective but they are thenceforth committed to their chosen status as a part of the class.

■ Turning to the case before us it is apparent that the court erred in entering its class determination order as a partial summary judgment without conducting a hearing when the state had not waived hearing.

■ From the findings entered by the court we are unable to determine whether the court attempted to distinguish between the three types of class action provided by TR 23(B), although some of the findings and order appear to indicate that action under TR 23(B)(3) was contemplated.[15] If so, then the court further erred by not directing individual notice to all of the members of the class that could be identified through reasonable effort, and in failing to impose the expense of providing the same upon the plaintiffs. (During oral argument it was suggested that the state desired to preserve the confidentiality of the identity of these patients. While under such circumstances and upon due consideration the court might well determine that approach to be a proper protective device, the costs of giving the notice should nevertheless be advanced by the class. *Oppenheimer Fund, Inc., supra.*)

■ Moreover, we must observe that the device sought to be employed by the court in directing the appointment of a guardian ad litem at each institution to receive notice and protect the interests of all patient–workers therein was inadequate. As the court's own order recognized, not all such patients are legally incompetent to handle their affairs,[16] and IC 16–14–1.6–4 expressly provides that all persons receiving mental health services are entitled to exercise their constitutional, statutory and civil rights except for those rights which have been denied or limited by an adjudication or finding of incompetency in a guardianship or other civil proceeding. Moreover, many of such patients no doubt have regularly appointed guardians of the estate in whom is reposed the exclusive authority to bring actions against third persons where it is sought to benefit the ward's estate. IC 29–1–18–37.

From what has been said herein concerning the history of the Patient Remuneration Act and the possibility of claims arising outside the act as disclosed by the current state of the pleadings we are unable to say whether or not the broad class initially defined by the court is a proper one, or whether as drawn the action fails to meet the requirements of TR 23(A)(3) and (4).

### V. Other Issues

■ Finally, we come to the issues pertaining to the merits determined by the court's partial summary judgment. In doing so we are mindful of what has already been said of the necessity of making the class action determination prior to adjudication of the merits of the case. We note that to preserve the vitality of that requirement, if the merits of the case have been substantially determined in a TR 23(B)(3) action before the class determination is made and the opt out rights afforded, the only effective remedy may be to deny class

---

15. While the form of order directed notice to absent members of the class, the proposed notice which is referred to in the order does not appear in the transcript. As the order, itself, is silent on the point, we do not know whether the absent members of the class were to be given the right to opt out.

16. For example, Fort Wayne State Hospital and Training Center is authorized to serve epileptic or paralytic children and New Castle State Hospital is maintained for the treatment of epileptics. IC 16–15–5–2, IC 16–14–21–1.

action status and permit the action to proceed only as to the claims of the individual plaintiffs before the court. *Peritz v. Liberty Loan Corp.* (7th Cir. 1975), 523 F.2d 349.

The court's grant of partial summary judgment on February 16 additionally adjudged that "the members of the class are entitled to be paid for all of their labor performed for the defendants, at least to the gross amounts specified in the Patient Remuneration Law, after April 1, 1972."

As the findings entered by the court make quite clear, this determination actually adjudicated two separate issues. It determined (a) that the plaintiffs were excused from failing to exhaust the administrative remedies provided by IC 16–13–12.-8–9 (a defense asserted by the state and presented in its cross motion for partial summary judgment); and further (b) that all members of the plaintiff class were entitled to be paid for all labor performed for the defendants.

■ Simply stated, the doctrine of the exhaustion of administrative remedies provides that before a court may take subject matter jurisdiction over a class of cases for which a statutory remedy exists, it must be shown that the statutory provisions are inadequate in protecting and preserving the substantive rights of the parties. *Decatur Co. R.E.M.C. v. Pub. Svc. Co.* (1971), 150 Ind.App. 193, 275 N.E.2d 857. Thus, where the statute under which an action arises provides a remedy through administrative review, a civil action will be subject to dismissal if the complaining party has failed to avail himself of the administrative remedy. *Amburgey v. Miller* (1977), Ind.App., 362 N.E.2d 869.

■ There are, however, several well recognized exceptions to the rule of dismissal. The rule will be departed from in extreme cases, where compliance with the rule would be futile, where the statute is charged to be void on its face, or where irreparable injury would result. *Indiana High School Athletic Ass'n. v. Raike* (1975), 164 Ind.App. 169, 329 N.E.2d 66, 82.

■ The principal problem with the court's determination that the plaintiffs were relieved from the requirement of exhaustion because the remedy provided was futile is that such determinations generally depend upon the facts and circumstances of the given case and thereby are usually unavailable for disposition by summary judgment. Thus, the materials before the court were sufficient to support denying the state's motion on the grounds that pursuing the administrative remedy might have been futile. On the other hand, they were insufficient to establish the futility as a matter of law. In determining no administrative remedy was available, the court's findings rely heavily upon the failure of the state to promptly establish the Patient Remuneration Board and adopt a patient remuneration schedule. However, the materials on file and before the court indicate that these failures were corrected long before the complaint was amended to assert a claim under the statute. Thus, a question exists as to whether any initial problem was cured in time that the statutory remedy thus made available should have been pursued. In addition, under the broad class to which the court applied its determination, many members may have performed the services in question only after the board was operating and a schedule adopted by it.[17] We do not mean to imply that the individual plaintiff Hartnett or the members of a proper class, if one is found to exist, had an adequate administrative remedy. We do hold simply that as determined in the court's order, the finding was premature, at best.

The same must be said of that part of the order determining that all patients are entitled to be paid for all labor performed. It is not disputed by the state and the materials before the court are sufficient to establish that literally hundreds of patients at the various state hospitals have performed services while in a patient status throughout the years. On the other hand, concerning potential constitutional claims, nothing in the record establishes that such services

---

**17.** Approached from the other direction, these matters raise issues which should properly be examined in any class action determination.

were sufficiently compelled to constitute a taking.[18] As to claims under the statute, at its effective date it only purported to cover service or work performed in an employee-employer relationship and contained an express exception for therapeutic work assignments. IC 16–13–12.8–1(h), 7. The materials before the court do not resolve the problems arising therefrom and, in fact, appear to preclude entitlement to pay for all labor performed.

Accordingly, we determine that the summary judgment was in error and must be reversed in its entirety. As it thus appears that the merits have not been determined prior to class determination, there is no need to invoke the remedy of *Peritz, supra.*

The summary judgment is reversed and the cause is remanded to the trial court for further proceedings consistent herewith.

Reversed and remanded.

HOFFMAN and STATON, JJ., concur.

---

18. Plaintiff Hartnett filed an affidavit asserting compulsion, and the state filed a counter–affidavit denying any compulsion.