MCMAHAN CONSTRUCTION COMPANY *v.*
WEGEHOFT BROTHERS, INC.

[No. 2-475A85. Filed September 8, 1976. Rehearing denied
October 18, 1976.]

*Maxwell Gray, Robert J. Hoffman, Lowe, Linder, Gray, Steele & Wiles,* of Indianapolis, for appellant.

*David F. McNamar, Steers, Klee, Sullivan, McNamar & Rogers,* of Indianapolis, for appellee.

LYBROOK, J.—Defendant-appellant McMahan Construction Company, brings this appeal as the result of a decree for specific performance, in a land sale contract, in favor of plaintiff-appellee Wegehoft Brothers, Inc.

McMahan, following a trial to the court, presents three alleged errors for our review:

(1) Was a sufficient agreement for the sale of land (either in the form of present agreement or written option) reached by the parties?

(2) May a written offer or option, to sell real estate, be exercised orally?

(3) Was the partial performance sufficient to remove the transaction from within the operation of the Statute of Frauds?

The record reveals the following facts, viewed in the light most favorable to the appellee, Wegehoft.

McMahan is an Indiana corporation engaged in the construction of highways and similar projects. During the year 1962 it was in the process of building Interstate Highway 465 in Marion County. In order to obtain sufficient amounts of fill dirt and gravel, McMahan purchased a ten acre lot located at 4404 Bluff Road in the City of Indianapolis.

Appellee Wegehoft was the owner of a parcel of real estate located adjacent to the above mentioned site. On or about June 17, 1964, while the construction project continued, project manager, William Koch, approached Walter Wegehoft in an attempt to purchase additional fill dirt from the land owned by Wegehoft.

Wegehoft responded affirmatively, but upon the condition that McMahan sell Wegehoft the land adjacent to Wegehoft's lot. This sale was to occur following McMahan's completion of

its use of the 4404 Bluff Road property. At this time a $5,000 price was agreed upon for McMahan's property.

A hand written "Memorandum of Agreement" was drafted by Koch and signed by both he and Walter Wegehoft (on behalf of Wegehoft Brothers, Inc.). The document contained the following provisions:

A. Wegehoft Bros. Inc. agree to sell to McMahan dirt and gravel from the land adjacent to the 4404 Bluff Road property owned by McMahan.

B. McMahan will pay $0.25 cubic yard for the material removed and will have the material measured by a registered engineer.

C. Wegehoft Bros. gives McMahan the right to remove the material as of June 17, 1964.

D. McMahan will hold harmless Wegehoft Bros. from any loss arising from its use of the property.

E. McMahan will apply payments for the purchase of materials toward the purchase of the 4404 Bluff Road land if the Wegehoft Bros. so desire.

F. McMahan Const. Co. will give Wegehoft the option to buy approximately 8½ acres located at 4404 Bluff Road for the price of $5,000. The option was to be exercised between January 1, 1966 and March 30, 1966, or sooner if McMahan so elects. McMahan reserved the mineral rights on the land to themselves.

Following the signing of the above agreement, Walter Wegehoft questioned the legality of the document and Koch indicated that he would send the agreement to McMahan's headquarters in Rochester, Indiana, and have an official contract prepared. No such contract ever arrived.

Shortly after this agreement, McMahan began removing material from Wegehoft's land. The removal continued until 1968 as McMahan engaged in other projects in the area. During this entire period, no accounting was ever made of the material removed from Wegehoft's property and no payments were ever made to Wegehoft.

Wegehoft continued to use the buildings on the McMahan property for storage, as it had done since the 1950's under an

agreement with the previous owners. McMahan also used the buildings for storage but did not ask Wegehoft to cease using the buildings.

On numerous occasions between 1964 and 1968 Wegehoft inquired as to when it would receive the deed to the property. It was informed by both Koch and Walter Landcaster, Koch's successor as project manager, that McMahan was not yet done and when they were finished they would let the Wegehofts know.

The record discloses that the Wegehofts were unaware that they held only an option to buy the property. However, sometime during 1967 Koch informed Landcaster that the Wegehofts had an option and were going to purchase the property.

In November of 1968, Richard Wegehoft traveled to Rochester to "settle-up" for the property at McMahan's home office. Prior to filing of the suit, McMahan had attempted to pay for the fill dirt removed from Wegehoft's property by tendering a check in the sum of $2,838.50, which McMahan's internal records showed as the value of the dirt removed. The Wegehofts returned that check and tendered a check for $2,161.50, the difference between the cost of the land ($5,000) and the payments which were withheld by McMahan.

When the Wegehoft check was returned, a second trip to McMahan's Rochester headquarters followed. At that time both Wegehoft and their attorney expressed no knowledge of an option to buy the land.

## I.

McMahan first contends that at no time was there a sufficiently specific agreement in existence between it and Wegehoft, as to the sale of the property in question, to support a decree of specific performance. This contention is based on a sufficiency of the evidence argument.

In the present case, there was conflict in the evidence pertaining to the establishment and sufficiency of the contract and

partial performance. It is axiomatic that this court will not weigh the evidence but only consider the evidence most favorable to the appellee and all favorable inferences to be drawn therefrom, and will reverse the trial court only if there is no substantial evidence of probative value to support the trial court's finding. *Hidden Valley Lake, Inc.* v. *Kersey* (1976), 169 Ind. App. 339, 348 N.E.2d 674.

A search of the record reveals that the trial court had sufficient evidence to support its finding that an oral option contract for the sale of the 4404 Bluff Road property was created. The record, from appellee's view, shows that Koch offered to buy and Wegehoft conditionally agreed to sell dirt from the Wegehoft property, this condition being that the 4404 Bluff Road property be sold to them at some future date. Koch testified that the contract was written as an option; first, because the Wegehofts had expressed some doubt as to buying the 4404 Bluff Road property and second, Koch knew McMahan needed the property for an uncertain time and did not want an immediate conveyance.

McMahan's chief contention in the first issue is a supposed lack of evidence of a "meeting of the minds" in the execution of an option contract. The signatures of the parties on the memorandum of agreement strongly suggests a meeting of the minds. Koch's testimony concerning Wegehoft's doubt as to purchasing the property, strengthens the court's finding.

McMahan also questions the intent of Wegehoft when the latter expressed doubt concerning the legality of the memorandum. The trial court was free to interpret that statement as a suggestion for a more formalized contract from the McMahan home office. A well known rule provides that mere reference to a more formalized contract does not void the presently existing agreement, whether that agreement be oral or an informal writing. *Featherstone, etc. Mach. Co.* v. *Criswell* (1905), 36 Ind. App. 681, 75 N.E. 30; Annot., 122 ALR 1217 (1939); 17 Am. Jur. 2d Contracts § 28 (1964).

The final contention dealing with the first issue and the formation of a contract relates to the specificity of the contract and the exactness necessary to allow an order of specific performance to stand. In essence, this is a challenge to the sufficiency of the writing to remove that contract from within the operation of the Statute of Frauds. The Restatement of Contracts § 207 (1932), as applied by the case of *Block* v. *Sherman* (1941), 109 Ind. App. 330, 34 N.E.2d 951 specifies the following as necessary for a sufficient memorandum:

§ 207   GENERAL REQUISITES OF A MEMORANDUM

"A memorandum, in order to make enforceable a contract within the Statute, may be any document or writing, formal or informal, signed by the party to be charged or by his agent actually or apparently authorized thereunto, which states with reasonable certainty,

(a)   each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, and

(b)   the land, goods or other subject-matter to which the contract relates, and

(c)   the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made."

A reading of the document in question makes it quite apparent that all the prerequisites and requirements for a sufficient memorandum have been met by the document. The parties have obviously been identified and both parties have signed the memorandum. The property to be sold was known to both parties and identified by the best available means, the common mailing address. The document specifies the duties and obligations of each party and is specific as to the price of both the dirt and the land.

One further aspect must be considered before a final resolution of the contract formation problem can be reached. Was a present contract for the sale of land formed, or was it merely an agreement to agree at some future date? The exact wording of the document seems ambiguous

in that it may refer to a time when the option will be offered, or it may refer to a future date for the execution of a presently offered option. In light of the entire surrounding circumstances, the conduct of the parties, and the expressed intentions of both the parties signing the document, this instrument can be interpreted to state a future date for the exercise of a presently offered option. An elementary rule of contract interpretation is that ambiguous documents will be construed against the author of those documents. *Rahn* v. *School City of Gary* (1940), 216 Ind. 542, 25 N.E.2d 441. Here the ambiguity is apparent, and must be construed against McMahan. We thus hold that the trial court was justified in ruling that a contract was created and that the writing was sufficient to remove the contract from within the operation of the Statute of Frauds.

## II.

McMahan next contends that a written option may not be orally exercised. In light of our resolution of issue III, concerning partial performance, we deem it unnecessary to confront the oral exercise issue.

## III.

McMahan's final issue contests the validity of the trial court's ruling that there was sufficient partial performance to remove the transaction from within the Statute of Frauds. In the instant case we are concerned with partial performance being sufficient to exercise a written option contract.

The part performance doctrine is well known. It allows an oral contract to be removed from within the operation of the Statute of Frauds. The degree or amount of performance required must, by necessity, vary with every case and be adapted to fit the situation of that case. *Sourbier, Guardian* v. *Claman* (1936), 101 Ind. App. 679, 200 N.E. 721. It is frequently held that payment or partial payment alone is not sufficient to constitute partial perform-

ance and removal from within the Statute of Frauds. Mere possession alone is not sufficient, especially if that possession is a continuation of an agreement for possession prior to the alleged oral contract. These two basic elements are discussed in the leading cases of *Jackson et al.* v. *First National Bank & Trust Company of LaPorte et al.* (1944), 115 Ind. App. 313, 57 N.E.2d 946; *Lloyd et al.* v. *Lloyd et al.* (1943), 113 Ind. App. 623, 48 N.E.2d 837; *Genda Administrator etc., et al.* v. *Hall* (1959), 129 Ind. App. 643, 154 N.E.2d 527.

When all of the factors are considered, there is more than sufficient part performance for removal from within the Statute of Frauds. Here a substantial percentage of the purchase price was paid. Wegehoft remained in possession, continually questioned when they would receive the deed to the property and were stalled by McMahan's agents. McMahan made internal accounting notations indicating the accounts payable to Wegehoft but forwarded no funds, and most significantly, Wegehoft allowed removal of dirt from their property in reliance upon the contract and their future right to receive delivery of the property in question.

While it is true that none of the above acts or circumstances taken individually, might be sufficient to constitute part performance, taken collectively, there is sufficient part performance to remove the transaction from within the operation of the Statute of Frauds.

No error having been demonstrated, we affirm the decision of the trial court.

Affirmed.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 354 N.E.2d 278.