STATE of Indiana on the Relation of Michael L. HARRIS, Thomas Frazier, III, Hugo J. Bobzien, Jr., Robert W. Greene, III, J. Robert Hard, John F. McKay, D. Ray Miller, James E. Nevin, and Jack E. Wolford, Individually and as Representatives For and On Behalf of All Other Taxpayers Similarly Situated, Relators,

v.

The SCOTT CIRCUIT COURT and the Honorable James D. Kleopper, Jr., as Judge Thereof, Respondents.

No. 1081S285.

Supreme Court of Indiana.

July 20, 1982.

John K. Gordinier, Wallace, Gordinier, Wilson, Ruck & Cooper, Louisville, Ky., Frank E. Spencer, Indianapolis, for relators.

Charles W. Hoodenpyl, Jr., Michael M. Maschmeyer, Charles W. Hoodenpyl, Jr., P. C., Jeffersonville, for respondents.

HUNTER, Justice.

This is an original action brought by relators following our denial of a temporary writ of mandate and prohibition on October 26, 1981. The case originated as a challenge to the constitutionality of the Indiana Occupation Income Tax Act, Ind.Code § 6–3.5–3–1, et seq. (Burns 1978), and on June 30, 1980, we held the act to be unconstitutional. *Clark v. Lee*, (1980) Ind. 406 N.E.2d 646. Thereafter, further proceedings were held in the respondent court to provide for a proper refund procedure for all persons who were members of the class affected by the collection of this tax.

The relators in this action are nine named plaintiffs involved in the class action who hired an attorney, Mr. John K. Gordinier from Louisville, Kentucky, to represent them. The named plaintiffs, through Mr. Gordinier, also hired Mr. Charles W. Hoodenpyl, Jr., of Jeffersonville, Indiana, as local counsel. The court determined that there were over 7,000 absent class members involved in the case. At some point during the refund proceedings in the Scott Circuit Court, a dispute arose between Mr. Gordinier and Mr. Hoodenpyl concerning the proper distribution of attorney fees. On Febru-

ary 20, 1981, Mr. Gordinier told Mr. Hoodenpyl that the named plaintiffs had discharged Mr. Hoodenpyl from the case. Accordingly, Mr. Hoodenpyl filed a motion for leave to withdraw his appearance as counsel with the respondent court. The court took this motion under advisement and subsequently denied it. However, on August 14, 1981, the court entered an order withdrawing the appearance of Mr. Hoodenpyl as counsel for the named plaintiffs and appointing him as counsel for the absent class members and as lead counsel for the class members during all further proceedings. The relators then submitted their writ of mandamus with this Court mandating the respondent trial court to vacate its order of August 14, 1981. We hereby set out our reasons why the majority of this Court voted to deny the writ.

Relators raise several issues for our consideration but, due to our disposition of the case, it is only necessary for us to discuss the following issue: Was the trial court authorized under Ind.R.Tr.P. 23 to exercise its discretion to appoint counsel for absent class members? This precise issue has not been previously dealt with in our state, but has received considerable attention in other jurisdictions.

■ It is clear that an analysis of the trial court's duties under Federal Rule 23 is fully applicable under our Ind.R.Tr.P. 23 as our rule is based upon the federal rule. First, it is well settled that Federal Rule 23 vests the trial judge with wide discretion in his application of the rule's various guidelines and imposes upon him the duty to continually manage and supervise a class action. *Pettway v. American Cast Iron Pipe Co.,* (5th Cir. 1978) 576 F.2d 1157; *Appleton Electric Co. v. Advance-United Expressways,* (7th Cir. 1974) 494 F.2d 126. The common thread running through all the federal cases is the overriding concern that each member of the class—named and absentee—is accorded adequate representation. In order to insure this adequate representation, the trial court in his discretion may appoint separate counsel to protect the interests of absent members of the class

and may appoint additional counsel to represent the interests of subclasses. *Howard v. McLucas,* (M.D.Ga.1980) 87 F.R.D. 704; *Esler v. Northrop Corporation,* (W.D.Mo. 1979) 86 F.R.D. 20; *Cullen v. New York State Civil Service Commission,* (2d Cir. 1977) 566 F.2d 846; *Armstrong v. O'Connell,* (E.D.Wis.1976) 416 F.Supp. 1325; 7 Wright & Miller, *Federal Practice and Procedure,* Civil (1972) § 1765 at pp. 617–625.

In this case, the trial court found that Mr. Hoodenpyl should be appointed as counsel for the absent class members because of his participation in and familiarity with this action since its commencement. The court stated:

"The court further finds that it is in the best interests of the absent class members for the court to appoint counsel for them in order to strengthen the representation of the absent class members, to provide for the protection of the absent class members, and to promote the vigorous prosecution of this action on behalf of the absent class members, including the further proceedings on the pending motion to correct error, which proceedings the court believes to be in the best interests of the absent class members."

The court further found that the appointment of Mr. Hoodenpyl would eliminate the possibility that absent class members would not be bound by the final order or judgment entered in this action due to lack of adequate notice or lack of adequate representation and would provide assurance that there would be continuing availability of qualified resident counsel to continue the action on behalf of the absent class members after the action involving the nine named plaintiffs is concluded.

■ The record shows continuing vigorous representation by Mr. Hoodenpyl on behalf of the absent class members including actions taken to insure adequate notice for the absent class members, the filing of fee petitions in order that there will be a hearing on the issue of the amount of attorney fees, and petitions filed which would increase the amount of interest due to class members. Relators have failed to show

that Mr. Hoodenpyl is not qualified to represent the absent class members, or has acted in an unethical manner, or has not proceeded with vigorous representation on behalf of his clients. The appointment of Mr. Hoodenpyl as counsel for the absent class members has not disrupted the progress of litigation and has not deprived the nine named plaintiffs of their chosen counsel. In fact, the representation of the entire class appears to have been substantially facilitated. Accordingly we find that the trial court was acting within his discretion and there was no abuse of that discretion in this case.

■ It is well settled that writs of mandate and prohibition will be issued only where the trial court has an absolute duty to act or refrain from acting. *State ex rel. Neese v. Montgomery Circuit Court*, (1980) Ind., 399 N.E.2d 375; *State ex rel. White v. Marion Superior Court*, (1979) Ind. 391 N.E.2d 596. The extraordinary remedy of a writ is not appropriate unless a clear and obvious emergency exists and the failure of this Court to act would result in substantial injustice. *State ex rel. Indiana State Board of Finance v. Marion County Superior Court*, (1979) Ind., 396 N.E.2d 340. Where the matter lies within the sound discretion of the trial court, this Court will not consider applications for writs of mandate and prohibition since the legal remedy of an appeal is adequate. Accordingly, we will not, by way of issuance of a writ, disturb a discretionary ruling of a court. *State ex rel. Shelbyville Newspapers, Inc. v. Shelby Superior Court*, (1979) Ind., 396 N.E.2d 337.

We find no abuse of the trial court's discretion in this case. The permanent writ is denied.

DeBRULER and PRENTICE, JJ., concur.

PIVARNIK, J., dissents with opinion in which GIVAN, C. J., concurs.

PIVARNIK, Justice, dissenting.

I respectfully dissent from the majority and would grant Relators' requested temporary Writ of Mandate and Prohibition. This Court has already established that it will issue a writ of mandate and prohibition to compel the performance of any duty enjoined by law upon a trial court. Further, we have held that when a trial court permits an unauthorized representation, it is properly the subject of a writ of mandate and prohibition. Such is the case before us.

The majority oversimplify and understate the facts in this case. They suggest that the dispute precipitating this action pertains only to the distribution of Relators' award of attorney fees. Relators were the named plaintiffs in a successful class action. Although the distribution of fees is involved, this dispute is more complex as it involves Relators' fundamental right to effective representation.

Relators initially retained Attorney John K. Gordonier and his Louisville, Kentucky, law firm to represent them. Since this cause had to be tried in Indiana, it was necessary for Gordonier to have as co-counsel an attorney licensed to practice in Indiana. Relators authorized Gordonier to hire as his local counsel Attorney Charles W. Hoodenpyl, Jr., of Jeffersonville, Indiana. Hoodenpyl was retained after he agreed that his compensation would be $50.00 per hour, plus all litigation and other expenses advanced or guaranteed by him. This retention and fee arrangement is evidenced by Hoodenpyl's letter to Gordonier of July 21, 1977.

Relators were awarded their attorney fees. The trial court did not, however, make any provision for the amount of the award or for its distribution. Presumably, this was because the court had never been informed about the retention and fee arrangement. The judgment of the trial court, including the awarding of fees, was affirmed by this Court on June 30, 1980.

On October 27, 1980, Relators filed a Motion for Further Order requesting the trial court to implement its judgment. On November 3, 1980, the trial court entered orders providing for the tax refunds mandated by its judgment. It also ordered that the amount of fees to be paid was to equal 25% of the total taxes, interest and penal-

ties unconstitutionally assessed by the Department of State Revenue, plus any accrued interest thereon. Thereafter a conflict arose as to whether the fees were to be paid out of the refund proceeds or in addition to them.

On November 18, 1980, the Attorney General filed a verified Motion for Relief from the trial court's November 3rd order. Gordonier and Deputy Attorney General Ted J. Holaday began negotiating to settle the conflict. With negotiations still in progress, the trial court entered an order dated December 31, 1980, granting the State's Motion for Relief. Specifically, the court ordered that 25% of the refund proceeds were to be paid as fees to Gordonier and Hoodenpyl in equal proportion. Hoodenpyl had not taken part in any of the settlement negotiations with Holaday. Neither Gordonier nor Holaday had anything to do with the December 31st order and both were surprised by it. Gordonier, Holaday and Hoodenpyl jointly signed and had filed on January 19, 1981, a Motion petitioning the trial court to vacate its December 31st order. They so moved because a settlement agreement had been reached which they believed was reasonable, efficient and in the best interests of both the Department of State Revenue and the class members.

In a letter dated January 28, 1981, Hoodenpyl informed both Gordonier and Holaday that Judge Kleopfer had called him on January 20, 1981, and that after discussing the case together, Hoodenpyl had agreed to prepare and file a proposed order to replace the December 31st order. Hoodenpyl further informed them that he had drafted the proposed order, 19 pages long, which he was going to tender to the judge if he received no objection within six days. Hoodenpyl stated in his letter: "... and, because I did not participate in them, the proposed order may not accurately reflect, and in fact may impinge upon, whatever negotiations took place and whatever agreement may have been reached...." At this point and with this information, Relators discharged Hoodenpyl as their local counsel.

Much conflict followed over whether Hoodenpyl still had any authority in the case. On February 24, 1981, Hoodenpyl filed a Motion for Leave to Withdraw as attorney for Relators and the entire Plaintiff class. In his Motion, Hoodenpyl stated to the trial court that the reason for his withdrawal was that he and Gordonier couldn't agree on a distribution of their fee award. When the trial court held its hearing on the Withdrawal Motion, Gordonier personally informed the trial judge that the reason for Hoodenpyl's withdrawal was not because of a fee dispute. At Hoodenpyl's insistence, the trial judge took the Motion under advisement. A series of conferences and telephone calls ensued. On several occasions, the judge stated that he would grant Hoodenpyl's Motion. He never did. On March 30, 1981, the trial court issued two orders. One granted the parties total relief from the order of December 31, 1980. It also partially granted the Attorney General's Motion of November 18, 1980. The other order denied Hoodenpyl's Motion to Withdraw.

Gordonier protested to the trial judge, arguing that the court was bound to accept Hoodenpyl's Motion to Withdraw since no party had objected to it. He also argued that the court had no reason to protect Hoodenpyl since he had already been paid for all of his services according to the fee arrangement to which he had previously agreed. Hoodenpyl filed a Motion to Correct Errors, again purporting to act for Relators under the authority and with the complicity of Gordonier. In fact, Relators and Gordonier had no knowledge of the Motion. They advised the court that the Motion was filed without their knowledge, and that they opposed it because it was in conflict with their interests. They moved to have the Motion stricken from the record.

The conflict over Hoodenpyl's authority continued. On June 1, 1981, Relators filed an affidavit stating that they had hired Gordonier and had authorized him to retain Hoodenpyl as local counsel, but that on or about February 6, 1981, they had directed

Gordonier to discharge Hoodenpyl from any and all further services. In early August, the trial judge said that he was going to remove Hoodenpyl. He told Gordonier: "We are now no closer than we were in January . . . as long as Mr. Hoodenpyl stays in the case we will never get anything accomplished." On August 10, 1981, he informed Gordonier: "I have told Mr. Hoodenpyl he is out." The judge set a conference for August 14, 1981. Gordonier was told to retain a new local counsel. On August 13, 1981, the judge notified Gordonier that he was going to enter an order withdrawing Hoodenpyl as Relators' counsel, but that he was going to order the appointment of Hoodenpyl as counsel for the absent class members. Hoodenpyl was also to be the lead counsel during all further proceedings. On August 14, 1981, the respondent court entered said orders. This original action springs therefrom.

It is Relators' contention that the trial judge acted improperly in appointing Hoodenpyl to be lead counsel and representative of the unnamed class members. Relators argue that the judge knew that although Hoodenpyl had represented them previously, he had been discharged because of conflicts over how Relators' case should proceed. The judge also knew that Relators believed Hoodenpyl to be acting contrary to their interests, and the interests of the class for which they were certified to represent. Relators specifically claim that Hoodenpyl is in violation of DR 2–110(B)(4). This disciplinary rule makes mandatory the withdrawal of an attorney who is representing a client before a tribunal when that attorney is discharged by his client. Relators point also to EC 5–19 which provides in part: "Regardless of the belief of a lawyer that he may properly represent multiple clients, he must defer to a client who holds the contrary belief and withdraw from representation of that client."

Relators' position is well taken. I agree with the majority in their interpretation of Ind.R.Tr.P. 23. This rule does give the trial judge wide discretion in applying the rule's various guidelines and does impose upon him the duty to continually manage and supervise a class action. I also agree that the court has the discretional authority to appoint separate counsel to protect the interests of absent class members and to appoint additional counsel to represent the interests of diverse sub-class groups. The instant problem is different. The issue here is the way in which a trial court may properly exercise its discretional authority in managing a class action. The pertinent question is whether the trial court abused or even exceeded its authority when it appointed as counsel for the unnamed members of this class the very same attorney who had previously been counsel for the named members of the same class, but who had been discharged by them for being in conflict with their interests.

In *State ex rel. Sendak v. Marion County Superior Court, Room No. 2,* (1978) 268 Ind. 3, 373 N.E.2d 145, the Attorney General sought a writ of mandate and prohibition to strike the appearance of an attorney appointed by the Governor to act in behalf of the State. The Attorney General's contention was that since the authority to appoint counsel to represent the State was in his office and not in the Governor's office, the trial court was duty bound to strike the appearance of the attorney appointed by the Governor. This Court granted the writ. In doing so we stated:

"In the case at bar an emergency clearly exists in that substantial prejudice to the Attorney General's efficacy in defending his statutory client, the ABC, would have resulted had this Court not acted. This is not a question of judicial discretion, but a question of the lawful authority of the trial court to overrule the Attorney General's Motion to Strike the Appearance. . . ."

*Id.,* 268 Ind. at 6, 373 N.E.2d at 148.

The important fact in the case before us is that Relators discharged Hoodenpyl. It was therefore mandatory under DR 2–110(B) that Hoodenpyl withdraw. He rightly motioned to do so. The duty of the Respondent court was to grant Hoodenpyl's Motion and to remove him from the case.

The pleadings were clear and the conflict obvious that the continued appearance of Hoodenpyl created problems in the prosecution and management of this case and raised doubts about the professional responsibility of both Hoodenpyl and the judge. After all, the judge also had a duty to prevent the continuation of a blatant conflict of interest and a duty under the Code of Judicial Conduct, Canon 3A(2), to maintain decorum in these proceedings so that the case might proceed in an orderly and just fashion. The record clearly indicates that the respondent trial judge admitted to Gordonier that such intense conflict had developed in this case that the parties could not proceed with Hoodenpyl involved. The trial judge was therefore duty bound to remove Hoodenpyl from the case. It is my view that the Writ of Mandate and Prohibition should have been granted.

GIVAN, C. J., concurs.