Nelson SKALBANIA and Indianapolis
Racers 1977, Inc., Appellants
(Defendants Below),

and

World Hockey Association, New England
Whalers, Quebec Nordiques, Winnepeg
Jets, Cincinnati Stingers, Edmonton Oil-
ers, and Birmingham Bulls, Appellants
(Defendants Below),

and

Indianapolis Racers, Indianapolis Racers
Limited, Hockey Management Inc., and
Hockey World, Ltd., Non-Appealing De-
fendants,

v.

Al SIMMONS, Keith Marshall and
Michael Kelly, Appellees
(Plaintiffs Below).

No. 2–382A71.

Court of Appeals of Indiana,
Second District.

Dec. 30, 1982.

William H. Stone, Columbus, Jones & Loveall, Franklin, for appellants Nelson Skalbania and Indianapolis Racers 1977, Inc.

William C. Barnard, Gordon L. Pittenger, Sommer & Barnard, Indianapolis, for appellants World Hockey Ass'n.

Robert F. Zoccola, Locke, Reynolds, Boyd & Weisell, Indianapolis, for appellees Al Simmons, Keith Marshall and Michael Kelly.

BUCHANAN, Chief Judge.

## CASE SUMMARY

The Indianapolis Racers Hockey Team (Racers), its owner, Nelson Skalbania, the World Hockey Association, and its constituent hockey teams bring this interlocutory appeal from the certification of a class of plaintiffs consisting of 1978–79 Racers season ticket holders, arguing that the trial court abused its discretion in granting class certification because individual questions predominate over matters common to the class.

We affirm.

## FACTS

This case arose from the collapse of the Indianapolis Racers professional hockey franchise during the 1978–79 season. At the time the team ceased operation, only 13 of 40 scheduled home games had been played.

Plaintiffs are a class of persons comprising 1978–79 Racers season ticket holders.

Through their representatives Al Simmons (Simmons) and Michael Kelly (Kelly), they brought suit against the various corporate entities owning and operating the Racer franchise.[1] They also sued Nelson Skalbania (Skalbania), the owner of the Racers, the World Hockey Association (WHA), the league in which the Racers competed, and the constituent teams which comprised that league during the Racers' final season.

In their complaint, plaintiffs request damages from Skalbania and the Racers for breach of contract (Count II, R. at 16); breach of warranty (Count III, R. at 17); and negligent operation of the Racer franchise (Count VI, R. at 18–19). Against the WHA, its constituent teams, Skalbania, and the Racers, plaintiffs request damages for common law fraud (Count I, R. at 15); common law fraud and breach of fiduciary duty (Count IV, R. at 17–18); tortious interference with the rights of the Racers and plaintiffs in the services and contracts of Racer players (Count V, R. at 18); negligent and reckless operation of and negligent failure to disclose facts indicative of the negligent and reckless operation of the Racer franchise (Count VII, R. at 19–20); tortious interference with the contractual relationship between plaintiffs and the Racers based upon merger negotiations which were conducted between the WHA, the Racers, and the National Hockey League (Count VIII R. at 20); and conduct supporting an award of punitive damages (Count IX, R. at 21).

For clarity we list these various claims on the following scorecard:

| COUNT | DEFENDANTS | CLAIM |
| --- | --- | --- |
| I | All | Fraudulent disclosure and failure to disclose the poor financial condition of the franchise. |
| II | Racers and Skalbania | Breach of contract. |
| III | Racers and Skalbania | Breach of express and implied warranties. |
| IV | All | Conspiracy to misappropriate and misappropriation of season ticket funds; breach of fiduciary duty. |
| V | All | Conspiracy to interfere with and interference with Racer player contracts. |
| VI | Racers and Skalbania | Negligent operation of Racer franchise. |

---

1. For the purposes of this opinion, the term "Racers" includes the Indianapolis Racers, Indianapolis Racers, Ltd., Hockey Management, Inc., Indianapolis Racers 1977, Inc., and Hockey World, Ltd.

| COUNT | DEFENDANTS | CLAIM |
|-------|------------|-------|
| VII | All | Failure to supervise Racer franchise; nondisclosure of poor operation of the franchise. |
| VIII | All | Negligent conduct of merger negotiations. |
| IX | All | Punitive damages. |

On May 22, 1981 plaintiffs filed a "motion to determine the propriety of class action" (*R.* at 26). On December 4, 1981 a hearing was held upon that motion to determine whether the class should be certified. During that hearing the depositions of Simmons and Kelly were published. Evidence elicited at the hearing established that out of 40 promised games, only 13 were played (*R.* at 270) and that the proposed class consists of 1,140 persons (*id.*), holding about 3,500 season tickets (*R.* at 269). Supporting Kelly's appointment as a class representative is his purchase of two season tickets at a total cost of $580. (*Id.*). Simmons bought four tickets for $1,160 (*R.* at 275).

Evidence before the court, included in the depositions, indicates that Racers' advertising appeared which featured the WHA logo (*R.* at 351) and that the WHA was the sanctioning body for the Racers franchise (*R.* at 380). The WHA, as the sanctioning league, permitted the team to exist and operate (*R.* at 432). By allowing the Racers to embark upon the 1978–79 season, plaintiffs allege that at the least, the league implicitly asserted that the Racers possessed the economic wherewithal to complete the season (*R.* at 444). Such representations were made prior to the purchase of season tickets by members of the class (*R.* at 384). The WHA itself continued operation after the Racers folded and the league completed the season in question. (*R.* at 272).

Plaintiffs also allege that the WHA and member teams received Racers players for inadequate or non-existent compensation (*R.* at 457). Such player transfers, which commenced after the season began, were detrimental to the Racers because the player sales constituted the disbanding of a competitive team. (*R.* at 358).

Insofar as Skalbania's conduct vis-a-vis the WHA is concerned, the evidence shows that, at the time he acquired the Racers,

Skalbania also owned the Edmonton Oilers. Despite the conflict of interest ramifications of such dual ownership, the WHA let Skalbania own the two teams at once. (*R.* at 353).

Plaintiffs also testified that merger negotiations between the WHA, the Racers, and the National Hockey League were harmful to the Racers because the uncertainty regarding the team's continued operation which those negotiations engendered depressed attendance at Racers games. (*R.* at 401).

Both Simmons and Kelly testified that they want their season ticket expenditures back (*R.* at 403, 435). Kelly described all season ticket holders as "being in the same seat as I'm in that as far as having lost the dollars that they invested." (*R.* at 441).

Following the hearing, the trial court, on February 12, 1982, certified this case as a class action pursuant to Ind.Rules of Procedure, Trial Rule 23:

## ORDER CERTIFYING CLASS ACTION

This matter, having come before the court on December 4, 1981, for a hearing to determine the propriety of permitting this action to proceed as a class action, and the court having heard the evidence now makes the following findings and entry:

1. The named plaintiffs, Al Simmons and Michael Kelly, are owners of season tickets for the Indianapolis Racers 1978–79 hockey season.

2. There were approximately 1,140 individual season ticket owners and a total of approximately 3,500 season tickets purchased for the Indianapolis Racers 1978–79 hockey season, including the aforementioned plaintiffs, and joinder of all such owners of 1978–79 season tickets is impracticable.

3. A class action is superior to other available methods for the fair and efficient adjudication of the controversy between the 1978–79 season ticket owners and the named defendants.

4. The plaintiffs Al Simmons and Michael Kelly seek to represent the class of 1978–79 season ticket owners in their claims against defendants to recover compensatory damages plus interest and punitive damages as a result of the cessation of operations of the 1978–79 Racers.

5. The claims of plaintiffs are typical of the claims of all 1978–79 season ticket owners, and involve common questions of law and fact which predominate over any questions involving only individual members.

6. The plaintiffs Al Simmons and Michael Kelly fairly and adequately represent the interests of all 1978–79 season ticket owners.

7. There is no other known litigation pending wherein a 1978–79 season ticket owner is seeking damages from any of these defendants as a result of the cessation of operations of the 1978–79 Racers.

IT IS THEREFORE ORDERED AS FOLLOWS:

1. This case shall be maintained as a class action by the plaintiffs, Al Simmons and Michael Kelly, as representatives of the class of 1978–79 Racer season ticket owners, pursuant to Trial Rule 23(B)(3).

2. Notice of this class action shall be made by first-class mail to each individual member of the class whose identity and address can be determined from the appropriate records of the Indianapolis Racers or other defendants. The defendants are to make such identities and addresses available to counsel for plaintiffs on or before the 1st day of March, 1982, and within sixty (60) days thereafter, counsel for the plaintiffs shall send out Notice to each member of the class.

3. The Notice to each member of the class shall be in the following form:

Dear 1978–79 Indianapolis Racer Season Ticket Owner:

From certain records maintained by the Indianapolis Racers you are listed as the owner of one or more season tickets for the Indianapolis Racers 1978–1979 hockey season. If your address is listed incorrectly or if your address has changed, please notify the attorneys listed below regarding your proper address.

A claim for damages has been filed with the Marion County Superior Court, Cause No. S178–1491, in Indianapolis, Indiana, by certain individuals who are owners of season tickets for the Indianapolis Racers 1978–1979 hockey season. This claim for damages has been filed by the individuals on behalf of themselves and all other owners of season tickets for the 1978–1979 Racers hockey season.

This suit seeks an award of damages plus interest to adequately compensate 1978–1979 Racer season ticket owners for their economic loss as a result of the cessation of operations of the Indianapolis Racers on or about December 15, 1978, a date substantially prior to the scheduled end of the Racers' 1978–1979 hockey season. The suit also seeks an award of punitive damages.

The aforementioned claims are being made against the following individuals and organizations:

1. Nelson Skalbania.
2. World Hockey Association.
3. New England Whalers.
4. Quebec Nordiques.
5. Winnepeg Jets.
6. Cincinnati Stingers.
7. Edmonton Oilers.
8. Birmingham Bulls.
9. Indianapolis Racers.
10. Indianapolis Racers Limited.
11. Hockey Management, Inc.
12. Indianapolis Racers 1977, Inc.
13. Hockey World, LTD.

The judgment entered as a result of this case, whether favorable or not to plaintiffs' claim on behalf of the class of season ticket holders, will include all members who do not request exclusion from the class. As a season ticket owner, you are a member of the class unless you request exclusion. Any class member who does not request exclusion will be represented by the attorneys for the class. If a class member desires, he may enter an appearance through his counsel. The court will exclude any member of the class, if he or she requests exclusion. If you want your claim excluded from this class action, you must notify the Marion County Superior Court, No. 1, City-County Building, Indianapolis, Indiana 46204, in writing by the 1st day of June, 1982.

All plaintiffs are represented by the following attorneys who are counsel for the class:

Robert F. Zoccola

Randall R. Riggs

Mark J. Roberts

Locke, Reynolds, Boyd & Weisell

One Indiana Square, Suite 2120

Indianapolis, Indiana 46204

(317) 639–5534

s/<u>Charles Applegate, Judge</u>
Marion County Superior Court, Room No. 1

(*R.* Appendix Vol. at 16–18). The defendants have obtained certification of this interlocutory appeal pursuant to A.R. 4(B)(6) and urge that the trial court's certification of the class was error.

## ISSUES

Skalbania and the Racers present the following issues:

1. Did the trial court abuse its discretion by certifying Count II of the amended complaint, seeking damages against the Racers and Skalbania for breach of contract, as a class action?

2. Did the trial court abuse its discretion by certifying Count III of the amended complaint, seeking damages against the Racers and Skalbania for a breach of express and implied warranties, as a class action?

3. Did the trial court abuse its discretion by certifying Count VI of the amended complaint, claiming damages against the Racers and Skalbania for negligent operation of the Racers franchise, as a class action?

The WHA and its constitutent teams join Skalbania and the Racers in presenting the following issues:

4. Did the trial court abuse its discretion by certifying Counts I, IV and VII of the amended complaint, seeking damages from all defendants for common law fraud and negligent failure to disclose facts regarding the condition of the Racers franchise, as a class action?

5. Did the trial court abuse its discretion by certifying Count IV of the amended complaint, alleging a breach of fiduciary duty by all defendants, as a class action?

6. Did the trial court abuse its discretion by certifying Counts V, VII, VIII and IX, alleging tortious interference with Racers player contracts, failure to prevent negligent operation of the Racers franchise, wrongful merger negotiations, and punitive damages, as a class action?

## DECISION

This is a class action case in which two season ticket holders have been designated as class representatives of all those similarly situated. Although it is not to be expected that they will represent the many as heroically as to prompt Winston Churchill's tribute to the Royal Air Force during the Battle of Britain, "never . . . was so much owed by so many to so few," they have been certified by the trial court as proper class representatives pursuant to T.R. 23(B)(3).

■ This interlocutory appeal requires us to consider only the question of the propriety of the certification of the plaintiffs' class. All parties seem to agree that the standard of review to be applied is whether the trial court abused its discretion in granting certification. The authorities support this conclusion. *State ex rel. Harris v. Scott Circuit Court,* (1982) Ind., 437 N.E.2d 952, 953 ("[I]t is well settled that Federal Rule 23 vests the trial judge with wide discretion in his application of the rule's various guidelines."); *Bowen v. Sonnenburg,* (1980) Ind.App., 411 N.E.2d 390. When considering a trial court decision to which the abuse of discretion standard is applicable, we will not reweigh the evidence. "On appeal where the evidence is conflicting and an abuse of the trial court's discretion is alleged, *we shall consider only the evidence most favorable to the judgment and all reasonable inferences to be drawn therefrom. McMahan Construction Co. v. Wegehoft Brothers, Inc.,* (1976) 170

Ind.App. 558, 354 N.E.2d 278." *Summerlot v. Summerlot,* (1980) Ind.App., 408 N.E.2d 820, 828 (emphasis added). If the trial court's exercise of discretion is supported by some evidence, then it will withstand appellate review. *Ruman v. Eskew,* (1976) 168 Ind.App. 428, 343 N.E.2d 806.

Trial Rule 23 provides, in pertinent part:

(A) Prerequisites to a class action. One or more members of a class may sue or be sued as representative parties on behalf of all only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

(B) Class actions maintainable. An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:

\* \* \* \* \* \*

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(d) the difficulties likely to be encountered in the management of a class action.

The rule plainly requires litigants to overcome several hurdles. First, *all* the conditions under subsection (A) must be satisfied; and further it must be demonstrated that the common questions of law or fact predominate over individual questions and that a class action is superior to other methods of dispute resolution. So our task is to determine whether the trial court properly exercised its discretion in ruling as it did upon the evidence before it and whether that evidence itself may properly be considered under the rule. In doing so we are aware that our supreme court has held that, because of the similarity between the provisions, federal cases decided under Federal Rule 23 are persuasive authority for Indiana courts interpreting Indiana Trial Rule 23. *Harris, supra* at 953. The federal courts do provide a wealth of authority as to the application of this rule.

ISSUE ONE—Did the trial court abuse its discretion in certifying Count II of the amended complaint, seeking damages against the Racers and Skalbania for breach of contract, as a class action?

CONCLUSION—The trial court did not abuse its discretion by certifying Count II as a class action.

■ The Racers would have us believe that, although the amounts paid for season tickets by individual plaintiffs may be readily ascertainable, "plaintiffs do not seek this type of recovery." (Appellant Racers' brief at 20). Instead, they claim that individual questions based upon individual, consequential damages (such as embarrassment) predominate. Furthermore, as to any damages sought based upon breach of contract, the Racers say that their precarious financial condition at the outset of the 1978–79 season presents individual questions based upon individual plaintiffs' assumption of risk. Plaintiffs respond that Count II of the amended complaint only seeks compensatory damages and interest thereon and that a mass breach of contract case presents a textbook example of a claim suitable for class action treatment.

Count II of the amended complaint alleges that the Racers' breach of contract was

detrimental to plaintiffs in that the breach "render[ed] their season tickets worthless." This pleading, which was before the trial court when it determined that Count II was a proper candidate for .class certification, supports the conclusion reached. We fail to see how it can be said that Count II asks for more than compensation for the amount paid for the tickets. We have previously held that differences in the amount of recovery will not bar class treatment in a case which, viewed as a whole, is suitable for such an approach. *Boehne v. Camelot Village Apartments,* (1972) 154 Ind.App. 21, 288 N.E.2d 771.

■ The Racers' argument that their precarious financial position early in the fall of 1978 bestows upon them a defense based upon ticket purchasers' assumption of risk does not defeat class treatment. Assuming the trial court finds such an argument legally meritorious, it has the flexibility, under Rule 23, to order separate trials on that particular issue, as on the question of damages, if necessary. *Green v. Wolf Corp.,* (2d Cir.1968) 406 F.2d 291. As we said in *Boehne, supra,* "once the court is convinced that there is substantial merit to plaintiff's claim, and that the class action device is the practicable method of vindicating these claims, it will not let procedural difficulties stand in its way." *Id.* 288 N.E.2d at 778 (emphasis deleted). Count II was properly certified for class treatment.

ISSUE TWO—Did the trial court abuse its discretion by certifying Count III of the amended complaint, seeking damages against the Racers and Skalbania for breach of express and implied warranties, as a class action?

CONCLUSION—The trial court did not abuse its discretion by certifying Count III for class action treatment.

The Racers' entire argument regarding this issue is that: "Again questions arise as to what representations or warranties were made, what constitutes quality hockey, and what damages each plaintiff suffered. Cf. Ind.Code Section 26–1–2–313, Express Warranties by Affirmation, Promise, Description and Sample; Ind.Code Section 26–1–2–

314, Implied Warranty." (Appellant Racers' brief at 22). Plaintiffs respond that every season ticket sold represented that 40 games would be played—and that it is uncontroverted that the Racers only survived long enough to play 13.

The trial court had before it evidence showing that every member of plaintiffs' class had purchased a season ticket. *Every* season ticket was purportedly good for 40 games and *no* ticket holder was able to see more than 13. Thus the trial court had before it evidence of the breach of at least one universally expressed warranty—that season tickets were good for 40 games each. Accordingly, there was evidence supportive of the discretionary determination that Count III should proceed as a class action. *See Summerlot, supra.*

ISSUE THREE—Did the trial court abuse its discretion by certifying Count VI of the amended complaint, claiming damages against the Racers and Skalbania for negligent operation of the Racers franchise, as a class action?

CONCLUSION—The trial court did not abuse its discretion by certifying Count VI for class action treatment.

The Racers recite evidence favorable to their position without consideration of the evidence supporting the trial court's exercise of its discretion. Assuming, as we must for the purpose of this interlocutory appeal, that negligent operation of the franchise vests in plaintiffs a cause of action, it is obviously a question common to *all* plaintiffs. *One* set of operative circumstances—the management of the hockey team—is the sole focus of inquiry under this count. This presents a classic example of "the common nucleus of operative fact" which is a touchstone of class certification analysis. *Arnold v. Dirrim,* (1979) Ind.App., 398 N.E.2d 426, 436.

ISSUE FOUR—Did the trial court abuse its discretion by certifying Counts I, IV, and VII of the amended complaint, seeking damages from all defendants for common law fraud and negligent failure to disclose facts regarding the condition of the Racers franchise, as a class action?

CONCLUSION—The trial court did not abuse its discretion by certifying Counts I, IV, and VII for class action treatment.

The WHA and its constituent teams join Skalbania and the Racers in this and succeeding issues. Under the umbrella of this issue we resolve the challenges to the trial court's certification for class treatment of the portions of Counts I, IV, and VII which allege common law fraud, failure to disclose the poor financial condition of the Racers, misuse of season ticket proceeds, and failure to prevent or correct the negligent and reckless operation of the Racers. The challenge to that portion of Count IV which alleges a breach of fiduciary duty is dealt with as Issue Five, *infra*.

All defendants claim that in order to prove fraud, *each* member of the plaintiff class must be questioned as to representations made to him by defendants. And, they claim that individual determinations will be necessary as to what constitutes reasonable reliance upon any representations made to each member of the plaintiff class. Plaintiffs respond by citing authorities which support the proposition that reliance may be inferred in actions for fraud, even when presumption is made regarding similar misrepresentations made to a group of persons. As to the counts alleging misuse of ticket proceeds, failure to prevent or correct negligent operation of the Racers franchise, conspiracy, and failure to disclose facts regarding the Racers, plaintiffs assert that these claims were properly certified because they each involve a common nucleus of operative fact.

■ Again we emphasize that our sole function in this interlocutory appeal is to determine the propriety of the trial court's class certification order. Neither the trial court nor we have been presented with any questions regarding the merits of the claims presented. Our analysis goes not to the likelihood of the success of any given claim, but rather to whether, when it comes time to make a determination of the merits of each claim, common questions of law and fact will predominate over questions affecting only individual plaintiffs. T.R. 23(B)(3); *Bowen, supra.*

As to the common law fraud counts, we cannot say as a matter of law that a complaint alleging that a group of persons has been defrauded by the same acts of defendants cannot be maintained as a class action. Indiana has allowed such class actions in the past. *Boehne, supra.* That the suitability of a fraud case for class treatment is an essentially factual inquiry entrusted to the discretion of the trial court is indicated by the commentators. In discussing T.R. 23(B)(3) actions, Professor Harvey states:

> "The court is required to find, as a condition of holding that a class action may be maintained under this subdivision, that the questions common to the class predominate over the questions affecting individual members. It is only where this predominance exists that economies can be achieved by means of the class-action device. In this view, a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed."

2 Wm. Harvey, Indiana Practice at 349 (1970).

The WHA and its constituent teams cite to a plethora of federal trial court decisions in which class certification was rejected. Although federal precedent is enlightening when analyzing cases under the Indiana rule, *Harris, supra,* we reiterate that our standard of review does not allow us to substitute our discretionary determination for that of the trial court. That the facts of this case may have supported non-certification of the class as well as certification is of no solace to defendants at this point. Unlike a trial court, our function is not to look at all the factors opposing and support-

ing class certification, but rather to focus upon whether there are factors supporting the trial court's action. The litany of reported federal *trial* court decisions which reach different results upon facts similar to this does not change the fact that the trial court determination herein was within the bounds of the law.

At the very least, the trial court had before it evidence supportive of its discretionary determination which showed that Racers advertising promoting the team during the season in question featured the WHA logo, that the WHA was the sanctioning league for the Racers, and that at the time the season ticket sales were being made the WHA was the organization in which the Racers were to compete. Evidence shows that season ticket advertising and the tickets themselves represented to all season ticket purchasers that the tickets were good for a full season of WHA league competition. By inducing purchasers, on the basis of those representations, to pay for a full season of games which were not to be, the evidence supports an inference of fraud.

■ As observed in *Vasquez v. Superior Court*, (1971) 4 Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964 (cited with approval in *Boehne, supra*), if plaintiffs can prove the existence of these common representations *at trial*, an inference would arise that the representations were made to each class member and it would be unnecessary to elicit the testimony of each plaintiff as to whether representations were made to him personally.

This rule of law, accepted in Indiana, *Boehne, supra,* supports the trial court's certification of the common law fraud counts for class treatment by providing an avenue of inquiry which does not focus upon the individual questions of receipt of and reliance upon representations. As in *Boehne* and *Vasquez,* we are confronted with an allegation that defendants made *some* identical misrepresentations. Because those identical misrepresentations may be proven, and because if that core of identical misrepresentation is proven it could provide sufficient evidence to support recovery, we cannot reverse the trial court's decision. Our initial focus is upon whether defendants recklessly or knowingly made certain identical misrepresentations. Thus, under this approach, common questions predominate and class certification was permissible. T.R. 23(B)(3); *Arnold, supra.*

Even if it is determined that separate inquiry must be made of class members, the flexibility of T.R. 23 ensnares and defeats plaintiffs' claim that certification was error. In *Brennan v. Midwestern United Life Insurance Co.,* (7th Cir.1971) 450 F.2d 999, *cert. denied,* 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792, a decision of the United States District Court for the Northern District of Indiana was affirmed. The circuit court concluded that subsection (D) of Rule 23 [2] empowers the trial court to make individual inquiry to members of the class and approved of individual discovery as a class action device:

**2.** (D) Orders in conduct of actions. In the conduct of actions to which this rule applies, the court may make appropriate orders:

(1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument;

(2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action;

(3) imposing conditions on the representative parties or on intervenors;

(4) requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly;

(5) dealing with similar procedural matters. The orders may be combined with an order under Rule 16, and may be altered or amended as may be desirable from time to time. The court shall allow reasonable attorney's fees and reasonable expenses incurred from a fund recovered for the benefit of a class under this section and the court may apportion such recovery among different attorneys.

"In summary, we hold that absent members of a class who receive notice of the pendency of the class suit may be subjected to the party discovery procedures permitted under the Federal Rules. Before ordering such discovery, a trial court must be assured that the requested information is actually needed in preparation for trial and that discovery devices are not used to take unfair advantage of 'absent' class members. Moreover, adequate notice must be given so that such persons are fully informed of the discovery order and the possible consequences of their noncompliance with it. In this case both requirements were observed."

*Id.* at 1006.

The questions regarding misappropriation of season ticket funds, the failure to prevent negligent or reckless operation of the Racers and failure to disclose facts regarding the Racers' precarious position will also be resolved by focusing on the conduct of the defendants. As presently postured, we cannot predict in this appeal how these claims may turn out. Our concern is the method by which they will be resolved, and that method necessarily will consist of looking to the conduct of defendants. So again common factual questions regarding the defendants' conduct and common legal questions as to whether that conduct supports legal relief predominate. The trial court exercised its discretion properly in certifying these counts.

ISSUE FIVE—Did the trial court abuse its discretion by certifying Count IV of the amended complaint, alleging a breach of fiduciary duty by all defendants, as a class action?

CONCLUSION—The trial court acted within its discretion by certifying Count IV for class treatment.

Defendants address much of their argument regarding this issue to "grave doubts about the plaintiff's theory." (WHA's reply brief at 41). Although some of their points are persuasive, defendants have directed their efforts toward a non-existent goal. We are not concerned in this appeal

with the denial of a T.R. 12(B)(6) motion, but rather with a grant of class certification. Plaintiffs simply argue that, under their theory, the alleged breach of "fiduciary duty" would be virtually identical for each class member, based as it is upon the misappropriation of funds paid for season tickets.

Again, looking not to the plaintiffs' probabilities of success, *Bowen, supra,* but rather to the nature of the evidence which will support the theory of the claim, we conclude that the trial court did not err by certifying this count. Whether a fiduciary relationship exists between plaintiffs and defendants is not the issue before us. The evidence through which such a relationship may be established will deal with representations made by Skalbania, the WHA, the Racers, and, possibly, constituent teams in the WHA. Perhaps plaintiffs will not be able to establish, factually or legally, that a fiduciary relationship exists. The predominant common question is still, however, the conduct of the defendants, a common question of fact.

The case relied upon by defendants to show that fiduciary duty questions should not be certified for class treatment indicates that the flexibility of T.R. 23 does, in fact, allow such actions. *Moscarelli v. Stamm,* (E.D.N.Y.1968) 288 F.Supp. 453, refers to cases involving common misrepresentations which may be *separately tried* from the individual issue of reliance. Even if defendants are correct in their insistance that there are individual questions of reliance, the ability to try those questions separately preserves the preponderance of common issues.

We add that in the event such separate inquiries regarding individual reliance become necessary, the resolution of the question as to whether they should, in fact, take place, or whether this count should be decertified should focus upon "promoting efficient economy of judicial resources." *Friar v. VanGuard Holding Corp.,* (1980) 78 App. Div.2d 83, 434 N.Y.S.2d 698, 707. Economies of time, effort and expense, and uniformity of decision as to persons similarly

situated are the key elements to be considered. *Id.* The flexibilities of the rule provide the trial court with the tools it needs to overcome procedural difficulties. *Boehne, supra; Wolf, supra.* Thus we decline to reverse the certification of the fiduciary duty claim.

ISSUE SIX—Did the trial court abuse its discretion by certifying Counts V, VII, VIII and IX, alleging tortious interference with Racers player contracts, failure to prevent negligent operation of the Racers franchise, wrongful merger negotiations, and punitive damages, as a class action?

CONCLUSION—The trial court did not err by certifying Counts V, VII, VIII and IX for class treatment.

The challenge to the allegation regarding tortious interference with Racers player contracts is based on *Strauss v. Long Island Sports, Inc.,* (1978) 60 App.Div.2d 501, 401 N.Y.S.2d 233, in which certification was denied to a class of plaintiffs suing because of the mid-season trade of a star player. Plaintiffs respond that *Strauss* is distinguishable from this case because only one player was traded, as opposed to the dissolution of an entire team. Defendants again raise the defenses of "contributory negligence and incurred risk" (Racers' brief at 25–26) as individual questions purportedly removing failure to prevent negligent operation of the Racers' franchise from the ambit of class treatment. They also assail the claim on its merits. Similar objection is made to certification of the claim of damages for wrongful merger negotiations. Defendants expressly waive appellate review of the certification of the Count IX demand for punitive damages.[3]

The count regarding tortious interference with Racers player contracts was not erroneously certified for class treatment. Again, without considering the claim on its merits, *Bowen, supra,* we observe that it alleges, *inter alia:*

2. That the defendants, individually and in concert, acted and conspired to act so as to tortiously interfere with the rights of the Racers and their season ticket holders in the services and contracts of the Racers hockey players, including, but not by way of exclusion, Wayne Gretzky, Eddie Mio, and Peter Driscoll.

3. That this interference not only severely compromised the quality of hockey played in Indianapolis during the 1978–1979 season, but said interference also greatly jeopardized the continued operation of, the franchise.

4. That the ultimate disposition of said players by the defendants was all accomplished to the benefit of the defendants and to the detriment of the plaintiffs, and that no funds were received for the services or contracts of the players, which funds would have ultimately been to the benefit of the season ticket holders.

(*R.* at 18). The record shows that the Racers received no compensation whatsoever for the three players named above (*R.* at 457) and that other WHA teams received the premium players in question. (*R.* at 358). These allegations focus upon a common nucleus of operative fact, *Arnold, supra,* potentially involving all defendants. Thus, the allegations before us regarding the "trades" made by the Racers have overtones of fraud upon the Racers corporate entities. Given the factual differences between this case and *Strauss,* where the

---

**3.** Footnote 1 at page 37 in the WHA's brief states:

"Count IX essentially alleges that, as a result of the various sins alleged against them in the other counts of the Amended Complaint, the WHA Defendants are liable for punitive damages. In light of its derivative nature, Count IX will not be separately discussed here—it seems clear that if the other claims alleged against the WHA are inappropriate for class certification, so is Count IX."

We interpret this to mean that in the event we approve class certification of any of the foregoing counts, defendants waive their challenge to Count IX being certified for class treatment. The Racers do not comment upon Count IX in their brief. *See generally, Shelby Federal Savings & Loan Ass'n. v. Doss,* (1982) Ind.App., 431 N.E.2d 493.

team continued to operate, without only one star player, we will not reverse the trial court's discretionary determination that Count V be certified for class treatment.

The only argument we can identify as pertaining to the portions of Counts VII and VII which allege failure to prevent negligent operation of the Racers franchise and wrongful merger negotiations, again raises, in somewhat conclusory form, the defenses of incurred risk and contributory negligence. Insofar as we have already considered and rejected defendants' claim that these individual defenses destroy common questions, *supra,* we will not again address them. Similarly, we again decline to consider these claims on their merits. *Bowen, supra.*

On November 15, 1982, William H. Stone and Tom Jones, counsel to Skalbania and the Racers, filed a petition for leave to withdraw their appearances. That petition is granted effective the date of this opinion. *State ex rel. Durham v. Marion Circuit Court,* (1959) 240 Ind. 132, 162 N.E.2d 505; *Kelly v. Bank of Reynolds,* (1976) 171 Ind. App. 515, 358 N.E.2d 146.

Having addressed the issues presented for review, we conclude that the trial court did not abuse its discretion in certifying this case for class treatment pursuant to Trial Rule 23(B)(3). Accordingly, it is

AFFIRMED.

SHIELDS, J., concurs.

SULLIVAN, J., concurs in part and dissents in part with separate opinion.

SULLIVAN, Justice, dissenting in part and concurring in part.

I dissent insofar as the majority opinion affirms certification of the class with respect to Count I of the complaint which alleges common law fraud. I otherwise concur.

It is apparent from the record of the hearing conducted for class certification purposes, that with respect to each of the counts of the amended complaint, plaintiffs' sole claim to the predominance of common questions of fact was that the claim of each season ticket holder was identical except as to the amount paid for the tickets and the location of the seats.

The representations involved under Count I, however, are not standardized. They are many and varied. Some are written and some are oral. They include media advertisements, newspaper articles, radio talk programs, at least one public speech and informal personal conversations. They are not of the nature or sufficiently similar to permit an inference or create a presumption that all members of the class relied upon each of the representations and to the same degree.

In this connection, I believe that reliance by my colleagues upon *Boehne v. Camelot Village Apartments* (1st Dist.1972) 154 Ind. App. 21, 288 N.E.2d 771 and *Vasquez v. Superior Court of San Joaquin County* (1971) 4 Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964 is misplaced. *Boehne* involved a single representation made to all members of the class. *Vasquez* involved a complaint alleging that the same representations were made to each plaintiff. In the latter case, the representations were standardized in that the appliance salesmen memorized a statement which was recited by rote to every member of the class. The two cases are clearly dissimilar from the case before us.

As noted by the majority in quoting from Professor Harvey's commentary, fraud cases are unsuited for class action treatment if there is material variation in the kinds or degrees of reliance by members of the class. On the other hand, to contemplate separate and individualized mini-trials with respect to reliance is to emasculate the class action as to the common law fraud claim.

The existence, vel non, or degree of subjective reliance by individual season ticket purchasers with respect to any, some, or all of the various alleged misrepresentations predominates over common fact questions. I would reverse the class certification as to Count I of the complaint. *Tober v. Charnita, Inc.* (M.D.Pa.1973) 58 F.R.D. 74 at 82–85.

To the same effect are *Gilbert v. Woods Marketing, Inc.* (D.Minn.1978) 454 F.Supp. 745 at 749–50; *Seiden v. Nicholson* (N.D.Ill. 1976) 69 F.R.D. 681 at 686; *Gatzke v. Owen* (N.D.Miss.1975) 69 F.R.D. 412 at 414–17; *Seligson v. Plum Tree, Inc.* (E.D.Pa.1973) 61 F.R.D. 343 at 345; *Banks v. Travelers Insurance Co.* (E.D.Pa.1973) 60 F.R.D. 158 at 162–63. *See White v. Deltona Corp.* (S.D. Fla.1975) 66 F.R.D. 560 at 562; *Advisory Committee's Note to Federal Rule of Civil Procedure 23,* 39 F.R.D. 98 at 103.