**ASSOCIATED MEDICAL NETWORKS, LTD., Associated Insurance Companies, Inc., and Anthem Health Systems, Inc., Appellants–Defendants,**

v.

**Dr. William R. LEWIS, Dr. Darryl Fortson and Wabash Avenue Medical Center, and all others similarly situated, Appellees–Plaintiffs.**

No. 49A05–0203–CV–122.

Court of Appeals of Indiana.

Feb. 26, 2003.

Thomas G. Stayton, John Joseph Tanner, Daniel R. Roy, Baker & Daniels, Indianapolis, IN, Attorneys for Appellants.

Irwin B. Levin, David J. Cutshaw, Cohen & Malad, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Defendants, Associated Medical Networks, Ltd. (AMN), Associated Insurance Companies, Inc. (AIC), and Anthem Health Systems, Inc. (AHS) (collectively, "Anthem"), appeal the trial court's certification of this case as a class action under Indiana Trial Rule 23, in favor of Appellees–Plaintiffs, Dr. William R. Lewis (Dr. Lewis), Dr. Darryl Fortson (Dr. Fortson), and Wabash Avenue Medical Center (WAMC), and all others similarly situated (collectively the "Doctors").

We affirm.

### ISSUES

Anthem raises two issues on review, which we restate as follows:

1. Whether the trial court abused its discretion in determining that the predominance requirement of Ind. Rule 23(B)(3) was satisfied.

2. Whether the trial court properly considered the pertinent matters enumerated in T.R. 23(B)(3)(a)-(d) when concluding that certification of the subject class was superior to individual actions.

## FACTS AND PROCEDURAL HISTORY

Anthem is a health insurer. During the 1990's, Anthem maintained "networks" of preferred health care providers, many of which are still in place today. Generally, networks like Anthem provide incentives, such as lower co-payments and greater insurance reimbursements to encourage patients to seek medical care from physicians who are part of the network. In turn, network physicians agree to accept fees for the medical services that they provide that are lower than they might ordinarily charge. In exchange for charging lower fees, the physicians in the network receive certain benefits from the insurer. Specifically, Anthem pays insurance claims directly to network physicians, rather than reimbursing the patients of network physicians. Overall, Anthem's networks allow it to reduce the costs of healthcare. Subsequently, the cost of premiums are correspondingly lower.

Since 1960, Dr. Lewis has practiced medicine in Gary, Indiana at WAMC. Dr. Lewis has rendered care to patients with health insurance from Blue Cross and Blue Shield (BCBS) (now Anthem); and he was paid directly by Anthem for the medical treatment that he rendered to Anthem insureds. In 1986, Dr. Lewis' license to practice medicine was placed on probationary status for an incident that occurred in 1978. From 1986 through 1991, Anthem continued to pay Dr. Lewis directly for the medical treatment that he rendered to his patients and its insureds. However, on February 4, 1991, Dr. Lewis was notified that he was no longer a member of Anthem's preferred or participating provider network. As a result, Anthem sent checks for Dr. Lewis' services directly to the insureds, i.e. his patients. The insureds were the payees on the checks. This practice continued until April of 1995, when the Indiana Medical Licensing Board lifted the probationary status of Dr. Lewis. At this time, Anthem resumed direct payment to Dr. Lewis and WAMC for medical services rendered to its insureds. During Dr. Lewis' probationary period, Anthem informed Dr. Lewis' patients that they should seek the services of another physician. However, Dr. Lewis practiced medicine in an area designated by Medicare as "medically under-served," or an area where there were not enough physicians to serve the local populace. As a result, Dr. Lewis continued to treat his patients and Anthem's insureds, but he was not paid by Anthem directly.

In October 1992, Dr. Fortson, the nephew of Dr. Lewis, began working with Dr. Lewis at WAMC. Even though Dr. Fortson did not have any restrictions on his license, Anthem refused to pay him directly for medical services rendered to his patients and its insureds. Instead, Anthem paid its insureds for the medical care that he rendered. Anthem has admitted that Dr. Fortson was disqualified from the network because he practiced with Dr. Lewis.

Anthem's direct payment of monies owed to the Doctors for services rendered was extremely tempting to many of the Doctors' patients. Several of the patients were poor or were recently hospitalized. As a result, many of the insureds, i.e. patients of the Doctors, cashed the checks from Anthem and never paid the Doctors. Consequently, the Doctors lost thousands of dollars in income.

In 1992, Dr. Lewis and WAMC filed an individual action in Lake County against Anthem and several of their patients. This complaint alleged that Anthem improperly paid medical insurance benefits, for treatments rendered by Dr. Lewis and WAMC, directly to the patients of Dr. Lewis and WAMC. At this time, Dr. Lewis

did not think of bringing a class action because he believed that Anthem was singling him out for the fact that he was an African–American and the fact that he performed abortions in the past. A couple of years later, Dr. Lewis attended a medical conference and found out that Anthem was applying the criteria of not paying doctors directly to other providers. Thereafter, Dr. Lewis initiated a class action lawsuit.

On October 25, 1995, the Doctors and others similarly situated, filed a class action in the Lake County Superior Court. In the complaint, the Doctors alleged that Anthem refused to honor valid assignments of benefits executed by their patients and Anthem's insureds. Additionally, the Doctors argued that Anthem failed to protect their valid equitable liens on health insurance proceeds generated as a result of their treatment of their patients. On the same day, the Doctors filed a motion to consolidate the 1992 action with the class action, and the trial court granted the motion. Anthem filed its answer and asserted the affirmative defense that pursuant to T.R. 75, proper venue was not in Lake County but in Marion County.

Subsequently, on November 17, 1995, Anthem removed the case to federal court on the basis of a federal question. Specifically, Anthem removed the case to federal court because the Employment Retirement and Income Security Act of 1974 (ERISA) governed many of the insureds. On January 10, 1996, the Doctors filed a Motion to Remand. On April 16, 1997, the District Court denied the Doctors' motion. As a result, the Doctors filed a Motion to Amend Complaint on May 27, 1997, in order to eliminate any claims pertaining to patients with health insurance plans governed by ERISA. On December 30, 1997, the District Court granted the Motion to Amend Complaint filed by the Doctors. Accordingly, the case was remanded back to state court. As a result of the Amended Complaint, the Doctors and the class members are limited to claims against patients with insurance policies that were not governed by ERISA.

On June 12, 1998, Anthem moved to have the case transferred to Marion County pursuant to Ind. Trial Rule 75, because the Doctors failed to file the case in the only court with preferred venue. The Lake Superior Court denied Anthem's motion and Anthem appealed the venue issue to this court. On June 16, 1999, we reversed the Lake Superior Court and ordered the case transferred to Marion County. *See Associated Med. Networks, Ltd. v. Lewis,* No. 45A04–9811–CV–532 slip op., 712 N.E.2d 55 (Ind.Ct.App. June 16, 1999).

On May 1, 2001, Anthem filed a motion for summary judgment on all of the Doctors' claims. On December 3, 2001, the trial court granted Anthem's motion for summary judgment on the Doctors' equitable lien claim, holding that Indiana law does not recognize this claim. The trial court also partially granted Anthem's motion for summary judgment on the Doctors' claim of assignment of benefits. To resolve the Doctors' claim on assignment of benefits, the trial court reviewed evidence pertaining to each of the Doctors' patients who allegedly received insurance benefits from Anthem but did not pay the Doctors for the medical services rendered. Specifically, the trial court determined what kind of health insurance plan each patient had and whether each patient gave the Doctors a valid assignment of benefits. Based on its patient-by patient, plan-by-plan, assignment-by-assignment review of the evidence, the trial court found that many of the patients' health insurance plans were governed by ERISA. Because only non-ERISA claims are at issue in this case, the Doctors' claims based on assign-

ments executed by patients with ERISA plans failed as a matter of law. The trial court also found that most of the forms that the Doctors offered as assignments of benefits from the patients lacked the "assignment" language that Indiana law requires. Consequently, as a result of the summary judgment ruling, the Doctors only have remaining claims for insurance benefits that Anthem paid to two of their patients.

Moreover, on December 3, 2001, the trial court also addressed the request of the Doctors to have the case certified as a class action. The trial court previously held a class certification hearing on October 17, 2001. On December 3, 2001, the trial court certified the case as a class action after considering the oral arguments of counsel and the materials filed in support. The trial court defined the class as follows:

> Any and all health care providers in the State of Indiana, who have ever had restrictions placed on their license to practice medicine by the Health Professions Bureau, including their professional associations, corporations, partnerships, associates, and partners, or who, for any reason, were not preferred health care providers or network providers, and to which Defendants and their predecessors failed to forward checks for medical services rendered to patients insured by [Anthem] or their predecessors (under health insurance contracts which are not governed by ERISA or which are specifically exempted from ERISA pursuant to 29 U.S.C. sec. 1003) directly to the health care provider, or otherwise include said health care provider as a payee on said checks, and who were damaged thereby.

(Appellant's App. pp. 15–6).

On December 21, 2001, Anthem motioned the trial court to enter the class action certification order as a final judgment pursuant to T.R. 54(B). On December 27, 2001, the trial court granted Anthem's motion. On January 2, 2002, the Doctors filed a motion to reconsider the trial court's December 27, 2001 motion, which entered the class certification order as a final judgment. On January 23, 2002, the trial court granted the Doctors' motion to reconsider, and extended the time for Anthem to move to certify the class certification order for interlocutory review by this court. On January 29, 2002, Anthem moved to certify the class certification order for interlocutory review. On March 13, 2002, Anthem filed a motion for this court to accept jurisdiction of the interlocutory appeal. On May 23, 2002, we accepted jurisdiction.

Anthem now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review

We review a trial court's decision to certify a class action for an abuse of discretion. *Rene v. Reed,* 726 N.E.2d 808, 816 (Ind.Ct.App.2000). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Bowles v. Bowles,* 721 N.E.2d 1247, 1249 (Ind.Ct.App.1999). This standard requires the appellate court to only look to the evidence most favorable to the class certification order and all reasonable inferences to be drawn therefrom to determine whether the trial court abused its discretion. *Lake County Trust Co. v. Wine,* 704 N.E.2d 1035, 1042 (Ind.Ct.App.1998).

A trial court may certify a class action only if the plaintiff meets its burden of satisfying the requirements of T.R. 23. *McCart v. Chief Executive Officer in Charge, Independent Federal Credit Un-*

*ion,* 652 N.E.2d 80, 82–3 (Ind.Ct.App. 1995). Specifically, T.R. 23 establishes a two-step procedure for determining the propriety of class action certification. The trial court must first determine whether the class meets the four preliminary requirements of T.R. 23(A):

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

*See* T.R. 23(A).

 Additionally, a class action that satisfies all four of the T.R. 23(A) requirements must also satisfy at least one of the three subsections of T.R. 23(B). The burden of proving the conditions precedent to class certification rests with the plaintiffs and the plaintiffs' failure to meet any one of the mandated prerequisites in T.R. 23(A) results in the denial of class certification. *ConAgra, Inc. v. Farrington,* 635 N.E.2d 1137, 1140 (Ind.Ct.App.1994), *reh'g denied.* A trial court has broad discretion in determining whether an action is maintainable as a class action. *CSX Transp., Inc. v. Clark,* 646 N.E.2d 1003, 1006 (Ind. Ct.App.1995); *Skalbania v. Simmons,* 443 N.E.2d 352, 356 (Ind.Ct.App.1982), *trans. denied.* On appeal, we neither reweigh evidence nor judge witness credibility. We affirm if the evidence most favorable to the judgment and all reasonable inferences to be drawn therefrom support the trial court's determination. *American Cyanamid Co. v. Stephen,* 623 N.E.2d 1065, 1070 (Ind.Ct.App.1993).

## II. *Class Action Certification*

In the present case, Anthem asserts that the trial court abused its discretion when it certified this case as a class action. Specifically, Anthem maintains that the trial court erred when determining that the predominance requirement of T.R. 23(B)(3) was satisfied.

As stated above, in determining the propriety of class action certification, a trial court must first determine whether the class meets the four prerequisites of T.R. 23(A), generally known as numerosity, commonality, typicality, and adequacy of representation. If these are met, the trial court must then assess whether the action also satisfies at least one of the three subsections of T.R. 23(B). Here, the trial court found that the Doctors satisfied the prerequisites to class certification pursuant to T.R. 23(A). Specifically, the trial court held:

All of the elements of Trial Rule 23(A) are satisfied in the present matter:

A. *Rule 23(A)(1)* (Numerosity): [Anthem] [has] identified more than Eighteen Thousand (18,000) health care providers' whose patients received direct payment from Anthem(f/k/a Blue Cross/Blue Shield). It is reasonable to infer that more than Forty (40) health care providers were not paid these funds by their patients such that joinder is impracticable.

B. *Rule 23(A)(2)* (Commonality): The claims of the [Doctors] and class members are all based on a common nucleus of operative facts. Anthem does not [assert] that there are no common issues of law or fact.

C. *Rule 23(A)(3)* (Typicality): The claims of the [Doctors] and the class members are all based on the same legal theories. There is no evidence

that [Doctors'] claims are antagonistic to the class claims.

D. *Rule 23(A)(4)* (Adequacy): [Doctors] testified at their depositions that they were committed to devoting the time and effort necessary to prosecuting this litigation. The named [Doctors'] interests are not antagonistic to the interests of class members. Finally, [Doctors'] counsel is experienced in complex and class action litigation, as evidenced by their firm resume.

(Appellant's App. pp. 14–5). Moreover, the trial court held that class certification was proper under T.R. 23(B)(3). The trial court stated:

The elements of Rule 23(B)(3) are satisfied in the present manner because common questions predominate over individual ones and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Court notes that individual class members do not appear to wish to control the prosecution of separate actions, that no other litigation concerning this controversy has been commenced, that is desirable to concentrate this litigation in a single forum, and that no difficulties are likely to be encountered in the management of this action as a class action. [Anthem's] common course of conduct in paying patients of non-Network health care providers is a predominant factual and legal issue.

(Appellant's App. p. 15).

### A. *Predominance*

■ In the instant case, Anthem does not concede that this case meets the requirements of T.R. 23(A). Instead, Anthem contends that we do not need to address whether the case satisfies T.R. 23(A) because the case fails to meet the requirements of T.R. 23(B). Anthem argues that the trial court abused its discretion by certifying this case as a class action under T.R. 23(B)(3). Specifically, Anthem asserts that the trial court abused its discretion in determining that the predominance requirement of T.R. 23(B)(3) was satisfied.

■ Class certification under T.R. 23(B)(3) is appropriate only where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *See* T.R. 23(B)(3). Anthem maintains that common questions cannot predominate where each class member will have to individually prove each claim at trial. However, Indiana law holds that the element of predominance can be established by a showing of a common course of conduct on the part of the class defendant. *See NIP-SCO v. Bolka,* 693 N.E.2d 613, 616–17, 620 (Ind.Ct.App.1998); *Connerwood Healthcare, Inc. v. Estate of Herron,* 683 N.E.2d 1322, 1326 (Ind.Ct.App.1997); *Skalbania,* 443 N.E.2d at 363.

Here, there is evidence to support a finding that questions of fact or law predominate over questions only affecting individual doctors and that class action treatment is a superior method of adjudication. *See id.;* T.R. 23(B). Anthem asserts that it was error for the trial court to conclude that there were common factual issues because the proof of the representative plaintiffs' claims, *i.e.* the Doctors' claims, will not operate to establish Anthem's liability to an absent class member or any element of a class member's claim. However, the record shows that Anthem engaged in a common course of conduct. Specifically, the record reflects that Anthem does not pay non-participating health care providers who have obtained assignments of ben-

efits from their patients, but pays their patients directly in derogation of the assignment of benefits. Since the trial court identified a common course of conduct, the predominance requirement of T.R. 23(B)(3) is established. *See Bolka,* 693 N.E.2d at 616–17, 620; *Connerwood Healthcare, Inc.,* 683 N.E.2d at 1326; *Skalbania,* 443 N.E.2d at 363. As a result, we find that it was certainly within the discretion of the trial court to conclude that Anthem's common course of conduct permeated each class member's claim and predominated. *See Lake County Trust Co.,* 704 N.E.2d at 1042.

### B. *Superiority*

■ Next, Anthem contends that the trial court abused its discretion by misapplying the requirements of T.R. 23(B)(3)(a) through (d) for class certification. Specifically, Anthem argues that the trial court improperly held that a class action is superior to other available methods for the fair and effective adjudication of the controversy. T.R. 23(B)(3) lists four factors that the trial court must consider when determining that a class action is the superior method of resolving a controversy. The matters pertinent to the findings include:

a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

d) the difficulties likely to be encountered in the management of a class action.

*See* T.R. 23(B)(3)(a)-(d). When determining what weight should be given to the factors listed in T.R. 23(B)(3)(a) through (d), the trial court is given broad discre-

tion. *American Cyanamid Co.,* 623 N.E.2d at 1074.

Here, the record reflects that during the class certification proceedings, Anthem provided no evidence that individual class members were interested in controlling their own litigation or that other litigation was commenced on the same issues. *See* T.R. 23(B)(3)(a) and T.R. 23(B)(3)(b). Moreover, the record is devoid of evidence from Anthem that the concentration of this litigation in centrally located Marion County is undesirable. *See* T.R. 23(B)(3)(c). In fact, the record shows that Anthem filed for the change of venue to Marion County. The evidence on the record also fails to establish manageability problems. *See* T.R. 23(B)(3)(d). The trial court retained jurisdiction to modify the definition of the plaintiff class to create subclasses in order to properly manage the case as a class action, pursuant to T.R. 23(D). Clearly, the trial court found that a class action is the superior method of resolving this controversy. *See* T.R. 23(B)(3)(a)-(d). Accordingly, we find that the trial court did not abuse its discretion in finding that Anthem's common course of conduct in paying patients of non-Network health care providers is a predominant factual and legal issue that is best resolved by means of a class action. *See American Cyanamid Co.,* 623 N.E.2d at 1070, 1074.

### CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion in certifying this case as a class action pursuant to T.R. 23(B)(3).

Affirmed.

MATTINGLY–MAY, J., and ROBB, J., concur.