WAL–MART STORES, INC., Wal–Mart d/b/a Sam's Club, Marie Ward and Nathan Clark, Appellants–Defendants,

v.

Berdita L. BAILEY and Sue Rhodus, Individually and on behalf of all others similarly situated, Appellees–Plaintiffs.

No. 49A02–0306–CV–511.

Court of Appeals of Indiana.

May 27, 2004.

Rehearing Denied Aug. 3, 2004.

Robert K. Stanley, Ellen E. Boshkoff, Edward E. Hollis, Baker & Daniels, Indianapolis, IN, Attorneys for Appellants.

Matthew W. Lampe, Jones, Day, Reavis & Pogue, Columbus, OH, Of Counsel.

James A. Knauer, Jay P. Kennedy, William Bock, III, Reynolds B. Brissenden, Kroger Gardis & Regas, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

SULLIVAN, Judge.

Wal–Mart Stores, Inc. appeals from the trial court's order certifying a class of current and former employees in the State of Indiana for claims asserted by Berdita Bailey,[1] a former Wal–Mart employee. The main issues presented by Wal–Mart for our review are; (1) whether the class definition improperly includes class members who have no standing in the litigation, and (2) whether the trial court erred in concluding that common issues predominate and that a class action is superior to

other methods of adjudicating the controversy.

We conclude that the issue of whether the class definition includes individuals who have no standing in the litigation is dispositive, but because the other issues present concerns which may arise upon remand, we address those in turn.

We reverse and remand.

Bailey is a former Wal–Mart employee who now claims that she was subject to a corporate policy at Wal–Mart which caused her to work off the clock and be uncompensated for her time. The facts disclose that Wal–Mart's general policy is that new employees receive a handbook when they are hired. The handbook warns employees against working when not clocked in, tells them that they are entitled to rest and meal breaks, and informs them that they may request written time adjustments if their time is not correctly recorded by their time cards. Wal–Mart policy is that for every seven hours an employee works, the employee should receive two fifteen minute rest breaks and a one hour meal break.[2] Employees are to be paid during their rest breaks but not during their meal breaks. It also appears that Wal–Mart expects its stores to reduce labor costs each year by two-tenths of a percent from the prior year's figures.

The management structure of Wal–Mart is such that the retail operations are broken down into operating divisions, each of which is headed by a divisional manager. Each division is made up of a number of regions headed by regional managers who

---

1. Bailey originally pursued her claim along with co-plaintiff Sue Rhodus. The trial court determined that Bailey was the sole plaintiff meeting the definition of the class. Thus, Rhodus could not be a class representative. Rhodus is a party to this appeal in name alone. *See* Ind. Appellate Rule 17(A). She

has not challenged her exclusion. Neither has Bailey challenged the trial court's determination upon that ground.

2. It appears that the 'Sam's Club policy is slightly different in regard to the length of a meal break.

oversee a number of districts, each of which has its own district manager. Approximately five to seven stores constitute a district. Each store is headed by a store manager. The compensation for store managers is based in large part upon a manager's ability to reduce costs and increase the profitability of a store. A large percentage of the costs which a manager can control are labor costs. According to one former manager, labor costs make up 70% of the costs within a store manager's control.

Bailey claims that because Wal–Mart has instituted the management and payment structure in place, it has forced managers to adopt or condone wrongful cost-saving practices and encourage hourly employees to work off the clock and through rest and meal breaks. She alleges that employees are faced with the dilemma of having more work to do than can be completed in a shift, but Wal–Mart policy is to limit overtime. As a result, she contends that employees must clock out and continue to work without pay. Moreover, she claims that employees are not given rest and meal breaks or are called back to work before their break is over. Evidence demonstrated that some store managers edit employee time records to show that breaks were taken or that individuals clocked out without ever confirming with the employee that the break was taken or whether they left work at a certain time. Finally, Bailey alleged that employees have been locked in stores overnight and the stores were not opened on time the following morning.[3]

Bailey commenced this action in order to recover damages for time she and other employees worked without compensation. Ultimately, she settled upon several theories of recovery: unjust enrichment, breach of implied contract, conversion, and constructive fraud. She also requested that punitive damages be awarded. Bailey also sought to have the litigation certified as a class action.[4] Following a hearing, the trial court granted her motion and ordered that the class be defined as "[a]ll current and former hourly employees of Wal–Mart Stores, Inc. (including its operating divisions Sam's Club and Wal–Mart Supercenters) in the State of Indiana during the period August 1, 1998 to present." Appendix at 61. Wal–Mart subsequently sought certification of the order for interlocutory appeal. That motion was granted; consequently, the issue of class certification is properly before this court. *See Martin v. Amoco Oil Co.*, 696 N.E.2d 383, 385–86 (Ind.1998) (holding that unless trial court certifies Trial Rule 23 determination as final under Trial Rule 54(B), it remains interlocutory), *cert. denied* 525 U.S. 1049, 119 S.Ct. 608, 142 L.Ed.2d 548.

*Class Certification*

Whether an action may be maintained as a class action is committed to the sound discretion of the trial court. *Northern Indiana Pub. Serv. Co. v. Bolka*, 693 N.E.2d 613, 615 (Ind.Ct.App.1998), *trans. denied.* We review a trial court's ruling on class certification for an abuse of discretion. *Id.* We will affirm the trial court's order if substantial evidence supports the trial court's exercise of discre-

---

**3.** All of Bailey's various contentions are supported by sworn affidavits of current and former Wal–Mart employees.

**4.** In seeking class certification, Bailey asserted in her memorandum supporting class certification that a class action was appropriate because the requirements of Indiana Trial Rule 23(B)(2) and (3) were met. At the certi-

fication hearing Bailey did not argue that certification was appropriate under T.R. 23(B)(2). Her reasons for abandoning that ground at the hearing are unclear. Whether certification is appropriate under T.R. 23(B)(2) will be discussed in further detail, *infra.*

tion. *Id.* In this case, the trial court sua sponte entered specific findings of fact and conclusions of law. When the trial court enters such findings sua sponte, the specific findings control only as to the issues they cover, and a general judgment standard applies to any issues upon which the court has not found. *Independence Hill Conservancy Dist. v. Sterley,* 666 N.E.2d 978, 981 (Ind.Ct.App.1996). We employ a two-tiered standard of review when reviewing specific findings. *Harris v. Harris,* 800 N.E.2d 930, 934–35 (Ind.Ct.App. 2003), *trans. denied.* We first determine whether the evidence supports the findings and then whether the findings support the judgment. *Id.* at 935. In deference to the trial court's proximity to the issues, we will reverse a judgment only when it is shown to be clearly erroneous. *Id.* A judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. *Id.* Although we defer substantially to the trial court's findings of fact, we do not do so as to the conclusions of law. *Id.* We evaluate questions of law de novo and owe no deference to the trial court's determinations of such questions. *Id.*

▮ Indiana Trial Rule 23 governs class certifications. The party requesting class certification must prove that the proposed class meets all of the requirements of T.R. 23(A) and at least one of the requirements of T.R. 23(B). *Sterley,* 666 N.E.2d at 981. In addition to the express requirements for class certification, there is an implicit "definiteness" requirement. *Id.* A properly defined class is necessary at the outset because a judgment in a class action has a res judicata effect on absent class members. *Id.* The class definition must be specific enough for the court to determine whether or not an individual is a class member. *Id.*

Trial Rule 23(A) provides that a plaintiff may sue as a representative on behalf of a class if the following four requirements are met:

"(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class." [5]

Trial Rule 23(B) lists the following three additional prerequisites, any one of which is sufficient to support a class certification:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of:

(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and

---

**5.** No claim is made that the prerequisites of T.R. 23(A) were not met.

that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

> (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
>
> (d) the difficulties likely to be encountered in the management of a class action."

According to T.R. 23(C)(1), a court may redefine a class in order to sustain a lawsuit before a decision on the merits of the claims. *Sterley*, 666 N.E.2d at 982. In addition, an action may be brought or maintained as a class action with respect to particular issues or a class may be divided into subclasses and each subclass treated as a class. T.R. 23(C)(4).

■ Each party has expended a considerable amount of time and effort in asserting both at the certification hearing and upon appeal that the propriety of certification depends upon whether Wal–Mart has a corporate-wide policy which results in employees being required to work off the clock.[6] The trial court concluded that because evidence existed which tended to show that Wal–Mart did indeed engage in practices which caused employees to work without compensation, the class action was certifiable. In the view of this court, the question of whether Wal–Mart actually utilized a policy in which employees would work off the clock does not establish the basis for certification of the class. Indeed, resolution of that issue does not resolve the specific claims brought forth by Bailey or establish any particular issues with respect to those claims.

In general, to prove the claims pursued by Bailey, it must be shown that Wal–Mart received something that it did not pay for, i.e. labor from its employees. As certified, the class includes employees who admitted that they had never worked off the clock in any manner.[7] In that respect, the facts of this case are not unlike those in *Kellogg v. City of Gary*, 562 N.E.2d 685 (Ind.1990).

The facts in *Kellogg* established that prior to January 1, 1980, citizens of Gary had been able to receive applications for handgun permits through the Gary Chief of Police. In an effort to control the number of handguns on the streets in Gary, an agreement was reached by the Chief of Police and the Mayor that the applications would no longer be available. Consequently, on January 1, the Chief of Police posted a sign making that proclamation. The *Kellogg* opinion further indicated that the citizens of Gary could not obtain the applications elsewhere. *Id.* at 688–89.

A preliminary injunction was issued which ordered that the Chief of Police make the applications available. In addition, a class action was certified on February 5, 1980 with two designated subclasses, the first of which was "all present holders of gun permits commencing on January 1, 1978 and ending on February 5, 1980" and the second was "all citizens of the City of

---

**6.** Throughout this decision, we will refer to "work off the clock" as encompassing all of the factual claims related to uncompensated work or missed breaks.

**7.** A significant number of affidavits and copies of deposition testimony from these employees is included in the appendix and was produced for the trial court's use in certification.

Gary who are desirous of obtaining a gun permit." *Id.* at 707. The end result of the class action was a declaratory judgment and permanent injunction in the citizens' favor and an award of $524,600 in attorneys fees to the citizens' counsel. *Id.* at 689. The jury also awarded compensatory damages of $880,000 to the first subclass and $12 to the second. *Id.* at 707.

Upon appeal, our Supreme Court addressed several issues, one of which was whether the trial court erred in allowing this lawsuit to proceed as a class action for compensatory and punitive damages. *Id.* at 709. Our Supreme Court concluded that "it was necessary and proper for all citizens of Gary to bring a class action to obtain the injunctive and declaratory relief they sought." *Id.* However, the Court also concluded that not all members of the class had questions of law or fact common to them when it came to assessing damages. *Id.* Specifically, in regard to the first subclass, the threat to many of the class members that they would be affected by the policy of not making applications available was nonexistent. *Id.* At the time, handgun permits expired every two years. Those whose handgun permits expired during the time that the applications were unavailable were affected, while those who need not have reapplied for their permits during the time in which they were unavailable were not affected and suffered no damage at all. *Id.* As a consequence, the Court held that the trial court erred in allowing the case to be tried as a class action for damages. *Id.* In doing so, the Court noted the case before

it faced a problem familiar to mass tort injury, that those cases simply do not lend themselves to class action treatment of the damage question because the question of damages will not be common to the class and each class member's situation is different and must be independently assessed. *Id.* at 710.

The Court also noted a second problem with the class beside the fact that damages were not readily ascertainable. Because a temporary restraining order had been issued on February 5, 1980 which required that the applications be made available, only those individuals whose permits were issued between January 1 and February 5, 1978 were in danger of having their permits expire. *Id.* at 711. As a consequence, the class was overbroad in that it included members who were not affected by the policy and it resulted in an excessive award of damages. *Id.*[8]

*Kellogg* is analogous to the case before us in that the connection between the class members in each case is the creation of a policy which would affect all members equally if successfully implemented.[9] Also present in both cases is the indisputable fact that the policy did not affect each individual class member. This dictates the conclusion that the trial court erred in certifying the class in this case. This conclusion is also supported by this court's decision in *Sterley, supra*.

In *Sterley*, this court noted that if a class definition includes persons without interests or standing in the lawsuit, the

---

**8.** The *Kellogg* opinion uses the word "damages" in two contexts. It first uses the word in the sense of the injury or lack thereof, sustained by certain members of the class. It also uses the word in connection with the compensation recoverable for the injury.

**9.** We do not intend to imply that we have reached the merits of Bailey's claim that Wal-

Mart has a policy in which it intentionally defrauds employees of pay by forcing them to work off the clock. Rather, for the sake of determining whether the class certification is appropriate, we consider her allegations only to determine whether the prerequisites for a class action have been established.

definition is inadequate. 666 N.E.2d at 981–82. The facts in *Sterley* revolved around who was responsible for paying for repairs to a sewer line which was under the street—the owner whose building was connected to the sewer main by the pipe under the street or the sewer utility. The trial court certified the class as " 'all homeowners who have been or may be affected by the Independence Hill Conservancy District Defendant's failure to repair and/or maintain its sewer and sanitary system within the publicly owned land and property within the system.' " *Id.* at 980. This court concluded that the certification was erroneous for several reasons. One ground upon which reversal of the class certification was warranted was that the definition could include all homeowners in the district, even those who had no interest in the lawsuit. *Id.* at 982.

We see no meaningful difference between the certified class in *Sterley* and the class here. In this case, the class was defined as "[a]ll current and former hourly employees of Wal–Mart Stores, Inc. (including its operating divisions Sam's Club and Wal–Mart Supercenters) in the State of Indiana during the period August 1, 1998 to present." App. at 61. Because the definition includes members who never worked off the clock, this class clearly includes members who have no interest in the lawsuit, at least with respect to whether Wal–Mart has committed acts upon which the class members may collect damages. Thus, they have no standing and the class as defined should not have been certified.[10]

That there were individuals in the class who had no standing is just one problem with the class certification and the

manner in which the class was certified. A second problem facing the class definition at issue here is the application of T.R. 23(B)(3). In its conclusion of law No. 55, the trial court stated, "Predominance of common questions is satisfied when 'the claims of the individual plaintiffs are derived from a common nucleus of operative facts.' " App. at 53. Further, the trial court concluded that the plaintiffs presented evidence identifying an alleged common course of conduct by Wal–Mart from which their claims arose. The trial court then stated that "[t]his evidence supports a finding that questions of fact or law predominate over questions only affecting individual employees." *Id.*

Wal–Mart argues that these statements reveal that the trial court relied upon an improper standard when determining whether issues common to the class predominated over individual issues. Wal–Mart asserts that just because the claims may arise from "a common nucleus of operative facts" does not mean that the common claims necessarily predominate. If that were so, it is argued that the predominance test of T.R. 23(B)(3) would be no different than the commonality test of T.R. 23(A)(2). We are inclined to agree.

In *Arnold v. Dirrim*, 398 N.E.2d 426, 436 (Ind.Ct.App.1979), this court noted that satisfaction of the predominance criterion of T.R. 23(B)(3) depended upon whether the claims of the class members derive from a common nucleus of operative facts. However, this court also concluded that the pertinent facts would be largely the same for all class members. *Id.* As a consequence, this court held that the common nucleus of operative facts satisfied the predominance requirement of T.R.

---

**10.** While we have chosen to refer to this as standing, it would appear that the concern is identical to the problem of a class definition being "overbroad" as recognized by our Su-

preme Court in *Kellogg*. In each case, the definition includes members who conclusively were not "affected" even though a specific policy was directed toward the entire class.

23(B)(3). *Id.* In *Edward D. Jones & Co. v. Cole*, 643 N.E.2d 402, 405 (Ind.Ct.App. 1994), *trans. denied*, this court relied upon *Arnold* to state that the predominance criterion was satisfied if the individual claims arose from a common nucleus of operative facts. In addition, the court also stated in *Cole* that whether there were questions of law or fact common to the class—the commonality requirement of T.R. 23(A)(2)— was also satisfied by whether the individual claims were derived from a common nucleus of operative facts. *Id.* It was then noted that a common nucleus of operative fact exists where there is a common course of conduct. *Id.*

At the hearing upon the motion for class certification, Bailey relied upon this court's decision in *Associated Med. Networks, Ltd. v. Lewis*, 785 N.E.2d 230 (Ind.Ct.App. 2003). In that case, this court held that because a common course of conduct existed,[11] the predominance requirement of T.R. 23(B)(3) was established. *Id.* at 236. This court so held based upon language from our decisions in *Northern Indiana Pub. Serv. Co. v. Bolka*, 693 N.E.2d 613 (Ind.Ct.App.1998), *trans. denied*, *Connerwood Healthcare, Inc. v. Estate of Herron*, 683 N.E.2d 1322 (Ind.Ct.App.1997), *disapproved on other grounds by Martin v. Amoco Oil Co.*, 696 N.E.2d 383 (Ind.1998), and *Skalbania v. Simmons*, 443 N.E.2d 352 (Ind.Ct.App.1982), *trans. denied*. However, after the hearing for certification was held in the case before us, our Supreme Court granted transfer of the decision in *Associated Med. Networks*. One of the grounds upon which transfer was sought was that this court had stated an incorrect standard of law in that T.R.

23(B)(3) and relevant case law all established that the common issues must "predominate" and that a common course of conduct may satisfy that requirement if it resolved an important issue in the class members' cause of action.[12]

In *Bolka*, this court noted the considerable overlap which exists between T.R. 23(A)(2) and 23(B)(3). 693 N.E.2d at 620. Nevertheless, we noted that T.R. 23(A)(2) requires that common issues exist while 23(B)(3) requires that they predominate. *Id.* The question at issue in *Bolka* was whether NIPSCO was liable for damage caused by emissions from a power generating plant to boats harbored near the Michigan City Generating Station. This court determined that the "class members were all damaged by the same course of conduct, a common nucleus of operative facts regarding emissions from NIPSCO's power generating plant." *Id.* We then concluded that the "issue of NIPSCO's liability for the emissions is the *central issue* with respect to each class member." *Id.* (emphasis supplied). As a consequence, we held that the trial court did not abuse its discretion in finding that the predominance requirement of T.R. 23(B)(3) was satisfied.

In *Connerwood Healthcare*, the Estate of a deceased nursing home resident sought certification for a class action arising out of the food poisoning of approximately seventy residents and employees of the nursing home. The crux of the complaint was that Connerwood's negligence caused injury to Herron, the deceased, and other residents. 683 N.E.2d at 1325.

---

11. The common course of conduct alleged was that Anthem did not pay non-participating health care providers who had obtained assignments of benefits from their patients, but paid their patients directly in derogation of the assignment of benefits.

12. Because transfer has been granted by our Supreme Court, we do not specifically address the analysis and holding in *Associated Med. Networks*. Rather, we focus our analysis upon the cases upon which this court relied in reaching the decision in that case.

Upon appeal, this court held that the predominance requirement of T.R. 23(B)(3) was satisfied because the action arose from common operative facts and that both state and federal courts had approved of class action treatment for mass torts such as a food poisoning. *Id.* at 1329. While not explicitly stated, implicit in that holding was that the common operative facts— that tainted food was served—would also establish the liability of Connerwood.

Finally, in *Skalbania,* season ticket holders pursued a class action against the Indianapolis Racers Hockey Team, its owner Nelson Skalbania, the World Hockey Association, and its constituent teams seeking compensation for ticket expenditures after the Indianapolis Racers ceased operation during the season. In that case, this court determined that several different claims were validly certified to proceed as a class action. 443 N.E.2d at 363. While noting that common questions of fact existed which satisfied the predominance requirement, the court did not state at any time that the predominance issue was satisfied because of a common course of conduct. Rather, after reviewing the specific claims, the court held that common questions predominated because of specific actions taken by the defendants, such as making identical misrepresentations to the plaintiffs, misappropriating season ticket funds, failing to prevent negligent or reckless operation of the Racers, and failure to disclose facts regarding the Racers' precarious position. *Id.* at 360–61.

■ The common theme throughout *Bolka, Connerwood Healthcare,* and *Skalbania* is that the existence of a common course of conduct by the defendant/defendants established that common issues predominated over individual issues and thus warranted certification. In each case, it is evident from this court's analysis and holding that the common course of conduct

could establish a main issue with respect to the case, such as the negligence of the party. In no way do those three decisions condone a reading of T.R. 23 such that the commonality requirement of (A)(2) and the predominance requirement of (B)(3) are one and the same. Rather, just as stated in *Bolka,* while there is considerable overlap between the two, T.R. 23(A)(2) requires that common issues exist while T.R. 23(B)(3) requires that those issues predominate. Therefore, while a common nucleus of operative facts *may* satisfy the predominance requirement, such is not necessarily so.

Given our analysis of the requirements of T.R. 23, we conclude that the trial court did apply an incorrect standard in determining that the common issues predominated over the individual issues. It is of no moment that the trial court correctly quoted in its conclusions the words from T.R. 23(B)(3) given that it also stated that "[p]redominance of common questions is satisfied when 'the claims of the individual plaintiffs are derived from a common nucleus of operative facts.'" App. at 53.

The final claim proffered by Wal–Mart is that a class action is not superior to other methods of adjudicating Bailey's claims. Much of the argument which Wal–Mart has made toward this specific issue is no longer a concern given that we have held that the class may not include members who never worked off the clock. However, Wal–Mart also claims that it will be prejudiced by the inability to question individual members of the class to determine their reasons for working off the clock or whether they intended to be paid for their work. While these concerns may ultimately have merit, especially in regard to calculating damages, they are less of a concern with determining whether Wal–Mart has benefited from the work that the employees performed. Because analysis

of the specific claims varies depending upon the manner in which a class or subclasses is defined, we decline the opportunity to speculate as to what may or may not be appropriate methods to determine liability and damages.

### Options Upon Remand

Even though we have determined that the class as defined is not properly maintainable, the class may be redefined in order to sustain the lawsuit. *See* T.R. 23(C)(1); *Sterley*, 666 N.E.2d at 982. In light of the possibility that Bailey wishes to proceed with certification under T.R. 23(B)(3), it may be that this action could proceed with one class made up of employees who were adversely affected by Wal–Mart policy or with several subclasses which align employees who claim that the policy affected them in a particular injurious way. Furthermore, we note the provision contained in T.R. 23(C)(4) which authorizes the action to be maintained with respect to particular issues. It may ultimately be necessary that the class action be maintained for certain issues, such as whether Wal–Mart was unjustly enriched or whether certain elements of unjust enrichment were met, but that damages would have to be calculated on an individual basis.[13] *See Kellogg*, 562 N.E.2d at 709.

A final option, if Bailey's goal is to stop Wal–Mart's policy of causing employees to work off the clock, would be to proceed under T.R. 23(B)(2). In our discussion of class certification in *Kellogg*, we recognized the Supreme Court's decision that it was necessary and proper for the citizens of Gary to seek declaratory and injunctive relief so that the policy directed at those seeking handgun permits would cease. 562 N.E.2d at 709. In that case, the Court also concluded that the trial court had erred in allowing the case to be tried as a

class action with respect to damages. *Id.* The similarities between the facts and issues present in this case and *Kellogg* are striking. Nonetheless, the merits of the issue of whether the class may be certified under T.R. 23(B)(2) are not before us because Bailey has not presented that specific ground for certification upon appeal and did not argue it before the trial court at the hearing on class certification. In the memorandum she filed with the trial court seeking certification, she argued that certification was appropriate under T.R. 23(B)(2). Why she later failed to pursue that ground for certification eludes us, but it may be that she believed that she did not have standing because she was no longer a Wal–Mart employee. Be that as it may, Bailey's failure to rely upon T.R. 23(B)(2) at the certification hearing does not preclude the possibility of relief under T.R. 23(B)(2). *See* T.R. 23(D) (referencing Trial Rule 16).

If certification is pursued under T.R. 23(B)(2) so that injunctive and declaratory relief may be had, we note that the class may receive damages, though the damages must be limited. In *Sterley*, this court noted the similarity between T.R. 23 and the corresponding federal rule; thus, application of the federal law in interpreting T.R. 23 is appropriate. 666 N.E.2d at 981 n. 2. The Federal Advisory Committee Notes on the 1966 Amendment to the federal rule make explicitly clear that subdivision (B)(2) is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. 39 F.R.D. 69 (1966). The Committee notes

---

13. This option would allow Wal–Mart the opportunity to defend against individual damage claims, which seems to be the biggest motivation in challenging the class certification.

that "[a]ction or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." *Id.* However, this subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages. *Id.* Applying these principles to this case, all Wal–Mart employees could be certified as class members under T.R. 23(B)(2) to enjoin the Wal–Mart policy at issue, and some monetary damages could be awarded to injured employees so long as the final relief was not predominately based upon monetary damages but was focused on an injunctive remedy. Nonetheless, we will not speculate with respect to how the parties will proceed upon remand.

The order certifying the class is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

ROBB, J., and BARNES, J., concur.